## F. F. COLLINS v. HENRY L. CHIPMAN.

### Decided February 7, 1906.

**1.—Fraud—Latitude in Proof.**

It is usually impossible to prove fraud by direct and positive evidence, and for this reason a large latitude is permitted in the admission of evidence on such an issue.

**2.—Representations as to Future Profits—When Competent.**

A statement that a purchase of property "is a splendid investment," made at the same time and in connection with representations as to conditions from which, if true, would necessarily follow the conclusion expressed by such statement, can not, if erroneously admitted in evidence, be prejudicial.

**3.—Conclusion of Witness—When Competent.**

The testimony of a witness, who had been bookkeeper, secretary and treasurer of defendant company, that during a certain period of time the earnings of defendant were not sufficient to pay a certain debt, was competent and relevant. Also, that in the opinion of the witness it would take all of defendant's assets to pay its debts.

**4.—Hypothetical Question—When Permissible.**

It is not essential that the hypothetical facts, upon which an expert bases his opinion or conclusion, should be uncontroverted; it is enough that there is evidence from which the jury may find the existence of the facts supposed.

**5.—Improper Argument to Jury—When not Ground for Reversal.**

By special charges the jury were instructed to disregard the language complained of. Assuming that the remarks in question were unauthorized by the evidence, it must be presumed in favor of the judgment that they were, in obedience to the instructions, disregarded by the jury and in no way affected the verdict.

**6.—Not Necessary to Prove Immaterial Allegations—Knowledge that Representation Inducing Purchase is Untrue—Not Material—When.**

The rule is general that, except as to allegations of essential description, whatever the pleader may allege as cause of action or ground of defense, it is only necessary to prove such allegations as are necessary to constitute a cause of action or establish a defense. If a statement of fact actually untrue is made by a person who honestly believes it to be true, but under such circumstances that the duty of knowing the truth rests upon him, which, if fulfilled, would have prevented him from making the statement, such representation may be fraudulent in equity, and the person answerable for such fraud.

Appeal from the District Court of Bexar County. Tried below before Hon. Edward Dwyer.

*Terrell, Hopkins & Terrell,* for appellant.—The sale of the stock by appellant to appellee having occurred more than three years previous

to the matters testified about as shown by the bills of exception and assignments, and the same being unauthorized by the pleadings in the case, the evidence was immaterial and irrelevant and prejudicial, for the reason that when appellee purchased the stock he took his risk like any other stockholder to win or lose, and the fact that it depreciated in value after his purchase not being an issue under the pleadings, said testimony was vital error. American Cotton Co. v. Collier, 69 S. W. Rep., 1021.

The court erred in permitting the plaintiff to testify as follows: "F. F. Collins told me repeatedly before the fourth day of January, 1902, that the stock of the F. F. Collins Manufacturing Company was a splendid investment. Mr. Collins also told me that he did not care very much about selling the stock, but that as he had an opportunity to erect a building on the property on Houston Street, then owned by him, and he concluded that if he sold the stock, he would use the money by improving the property. Both W. B. Mc-Millan and Frank Grigg urged upon me the desirability of this stock in the F. F. Collins Manufacturing Company as a good investment, etc." And that said testimony so elicited from said witness aforesaid was inadmissible, insofar as such interrogatory elicited from the witness the prospective profits of the corporation, and which seeks to state the opinion and conclusion as to the character of the investment, in that, in a business way, no man could determine what the prospective profits would be, and because such testimony is a conclusion, stating the character of investment. "That it was a splendid investment," are the words used, is a conclusion of the witness and seeks to show earnings anticipated; and because such testimony is not authorized by the pleadings in the case, and tended to and did prejudice defendant's cause before the jury. American Cotton Co. v. Collier, 69 S. W. Rep., 1021; Johnson v. Martin, 81 Texas, 18.

The court erred in permitting the plaintiff to prove by the witness, W. C. Price, by deposition, the following interrogatory and answer, to wit:

"28th Cross Int. As a matter of fact, is it not true that during the whole of the time you were connected with the F. F. Collins Manufacturing Company, its earnings were not sufficient to pay off the debt due to F. F. Collins, as a part of the purchase money for the plant where the business was transacted?"

"To the 28th Cross int. he answers: "Yes." Because the same sought to elicit the opinion and conclusion of the witness, in that it involved a general proposition of being able to pay a certain item of indebtedness, and because there was no proof to show that the witness had sufficient knowledge of the facts to know. He simply states his conclusion about it; and in addition thereto, it does not tend to prove the market value of the stock when it was purchased by Chipman from Collins on the date of the purchase, or the value of the property previous to that date. It being well decided that the only proof of the value of the stock is at the time of the purchase and the dividends declared, upon which this suit was based, and the allegations in the petition, and there being no allegations in the pleadings to authorize this proof.

The court erred in permitting the plaintiff to prove by the witness

M. Krueger, who was being cross-examined on behalf of the plaintiff, in substance the following:

"That supposing in January, 1902, the books showed there was $163,700 of assets over and above the liabilities, or in other words equalled the capital stock outstanding in January, 1902, and supposing that in May, 1903, there was not a vestige of the assets, not a cent to be applied to the payment of the stock, that everything was gone, in the absence of some explanation to the contrary, it would indicate that in January, 1902, there was a gross over-valuation of the company's assets."

And further that the court erred in permitting plaintiff to prove by the witness J. N. Brown, who was being cross-examined by the plaintiff, in substance the same facts as shown above. The same is inadmissible, for the reason that the interrogatory is based upon a hypothesis foreign to any evidence in this case, and being no proof of character of value of this stock made in 1905, and because said testimony does not prove, or tend to prove, any facts authorized by the pleadings in this case, and because it is not permissible to thus show the value and the previous financial standing, or dividends, or authorized capital stock, or the amount actually paid in or whether the F. F. Collins Manufacturing Company's real estate was incumbered or unincumbered, or of the reasonable market value of said stock on January 4, 1902, and that same is prejudicial and harmful. And because the same seeks to elicit a mere speculation for a period of three years after the transaction, is mere guess work, immaterial, and prejudicial, is not authorized by any pleadings involved, and does not tend to elucidate any of the issues before the court, the same failing to show the value of the stock before or at the date of the sale to the plaintiff, or of its actual condition at said time or before said time.

The court erred in permitting the plaintiff to prove by the witness, F. F. Collins, while being cross-examined in behalf of the plaintiff, in substances the following:

That Mr. Austin had received a salary during the time that he had worked for the company of $200 per month, but that he had drawn as much as $4,800 a year, and that during that time that the witness got, he thought, $75 a month, and as high as $3,500 a year, about 1900 or 1901, and that at the last wind up while Mr. Austin was manager, before he left on that trip he got $200 a month, and the witness $75 a month; because it was immaterial and irrelevant, and does not prove nor tend to prove any of the allegations authorized by the pleadings; and tended to prejudice the cause before the jury, and was not authorized by the pleadings.

The court erred in permitting the plaintiff to prove by a trial balance of the F. F. Collins Manufacturing Company, covering a period from December 15, 1901, to December 14, 1902, a net loss of $14,839.66, for the reason that the same shows a statement of business after the trade was consummated, and because the only issue here is, what was the value of the stock, and what it had paid up to the date that this purchase was made, to wit: January 4, 1902, and evidence showing losses after the trade was consummated does not prove nor tend to prove any of the issues under the pleadings in this case.

The court erred in failing to reprimand counsel for plaintiff and requiring counsel to withdraw a statement made in the presence of the jury, and propounded in the form of an interrogatory to Judge A. W. Seeligson, while he was testifying as a witness on cross-examination in behalf of the plaintiff, and which said question was propounded in the presence of the jury, read as follows, to wit:

Q.   You were asked by Mr. Hopkins if you ever skinned anyone?

A.   He asked if anyone ever skinned me.

Q.   Did any one ever bring suit against the F. F. Collins Manufacturing Company? Is it not a fact that W. W. Pierce or T. W. Pierce brought suit against the F. F. Collins Manufacturing Company to recover the purchase price of $15,000 in the Forty-fifth District Court and the suit went to trial and was compromised by F. F. Collins by paying $14,000?

The court sustained the objection and instructed the jury not to consider any such statement.

The court erred in his charge because the petition, the basis of this suit, alleges not only that such representations "were untrue and false," but in addition thereto says, "defendants and each of them knew at the time said representations were made, that the same were untrue and false," and no such issue is submitted to the jury in the foregoing charge. Jackson v. Stockbridge, 29 Texas, 394; Carson v. Houssels, 51 S. W. Rep., 290.

Nineteenth assignment of error: The court erred in refusing to give special instruction No. 10, requested by the defendant, as follows, to wit:

"You are charged that on and after the date that plaintiff purchased the sixty shares of stock, that it became and was his duty to exercise ordinary care to discover and know for himself the exact situation of the F. F. Collins Manufacturing Company, and you are further charged that whatever facts could have been learned by plaintiff by the exercise of ordinary care he is chargeable therewith, no matter whether he in fact had actual knowledge thereof or not, and in this connection if you believe from the evidence that the plaintiff, by the exercise of ordinary care, could have known of the purchase money lien of $50,000, the amount of dividends declared, if any, before his purchase, the amount of authorized capital and the amount actually paid in, and the financial condition of the F. F. Collins Manufacturing Company, on the date of his purchase of shares, and if you further believe that the plaintiff failed to exercise ordinary care to discover the foregoing, but continued to take his chances as a stockholder to make or lose, and that after failing to exercise ordinary care the stock so purchased by him did materially decline in value and before the institution of this suit or offer to rescind, then you will find for the defendants."

The court erred in refusing to give special instruction No. 8, requested by the defendants, as follows, to wit:

"Even though the jury should believe that plaintiff has been defrauded as claimed in his pleadings, yet it was his duty to seek relief therefrom in a reasonable time after the discovery of such, and if you find from the evidence that on or about one year after plaintiff purchased the stock he knew no dividends were declared, then plaintiff

was put upon inquiry of the truth of the matters complained of by him, and if you find from the evidence that plaintiff continued to own and control said stock, and taking his chances to win or lose, for more than a year after knowing such fact before offering to rescind or bring this suit, then you are charged that he is estopped, and you must find in favor of the defendants."

Twenty-third assignment of error: The court erred in refusing to give special instruction No. 11, requested by the defendants, as follows, to wit:

"If you find from the evidence that plaintiff purchased 60 shares of stock paying $6,000 for the same and same were delivered into his possession on January 4, 1902, and that since said date and up to the date of the filing of this suit on February ——, 1904, plaintiff has continually held and owned the same and that no dividends were declared for the year 1902, and that plaintiff knew of such fact and so knowing continued to hold, own, and possess said shares, taking his chances for whatever profits or losses that might be lost or earned and up to the date of the filing of this suit without offer or promise of rescission of defendant Collins, you will return your verdict in favor of defendants."

The court erred in refusing to give special charge No. 21, as follows: "That the mere fact that a hard bargain had been driven, or that the buyer has sustained a partial or total loss, is in this case, of itself, no valid ground for rescission."

The court erred in refusing to give special instruction No. 22, requested by the defendants, as follows, to wit:

"If you find from the evidence that plaintiff understood at the time he purchased the stock that it sometimes paid $7\frac{1}{2}$ percent in cash and the balance of dividends in stock to the amount of 15 percent, then you will find for the defendant."

*Thos. O. Murphy* and *John Sehorn,* for appellee.—As against the second, fifth, ninth and eleventh assignments of error, cited: Burnham v. Logan, 88 Texas, 4; Graham v. Roder, 5 Texas, 148; Cleveland v. Dugan, 2 Texas App. Civ. Cases, 84; Thompson v. Shannon, 9 Texas, 536; Wichita Land, etc., v. State, 80 Texas, 689.

As against the third assignment: Burnham v. Logan, 88 Texas, 4; 14 Am. and Eng. Ency., 198 (2d ed.); 23 Am. Dig., col. 1771 (M. W.).

As against the sixteenth assignment: Loftus v. Ivy, 37 S. W. Rep., 767; Burnham v. Long, 88 Texas, 4; 14 Am. and Eng. Ency., 198; Wiggin v. Day, 75 Mass., 97; 23 Am. Dig., col. 1769.

As against the eighteenth assignment: 14 Am. and Eng. Ency. Law, pp. 112-115 (2d ed.); 23 Am. Dig., col. 1758 (n); Pridham v. Weddington, 74 Texas, 354; Henderson v. San Antonio & M. Ry., 17 Texas, 574; Wright v. Calhoun, 19 Texas, 420.

As against the nineteenth assignment: American F. L. & Mort. Co. v. Pace, 56 S. W. Rep., 377; Labbe v. Corbett, 69 Texas, 509; Railway v. Kisch, L. R., H. L., 120; Griffith v. Hanks, 46 Texas, 219; 14 Am. and Eng. Ency. Law (2d ed.), pp. 115, 121, 122, 126, 127, 133, 161; Wilson v. Higbee, 66 Fed. Rep., 723; Wheeler v. Baars, 15 So. Rep., 584; Backer v. Pyne, 30 N. E. Rep., 21.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee against the F. F. Collins Manufacturing Company, a domestic corporation, and against F. F. Collins individually to recover the sum of $6,000 together with interest thereon from the 4th day of January, 1902, alleged to have been paid by him to the defendants as the purchase money for sixty shares of capital stock alleged to have been purchased by him on that date from the defendants.

As the basis of his recovery appellee alleged that prior to and upon the date of the alleged purchase, defendants F. F. Collins, individually, and for the F. F. Collins Manufacturing Company, and by their agents falsely and fraudulently represented that the said manufacturing company was in a prosperous financial condition and had ever since it was incorporated earned net profits and paid its stockholders not less than 20 percent dividends; that the authorized capital stock of the company was $200,000, of which $165,000 had been subscribed and fully paid in, and that the building and premises situated on East Houston Street in the city of San Antonio, in which the business of the corporation was transacted, belonged to and was the property of said company and was fully paid for and unincumbered; and that, relying upon the truth of the aforesaid representations so made to him by defendants—which representations were material, relied upon by him, and induced him to make said purchase—plaintiff on the 4th day of January, 1902, paid defendants said sum of $6,000 and received therefor from defendants a certificate of ownership for sixty shares of the capital stock in said manufacturing company.

In another paragraph of the petition plaintiff averred that the representations so made to him by defendants were unture and false, and defendants and each of them knew at the time they were made that they were untrue. That it was not true that the corporation on the date stated was in a prosperous financial condition, but on the contrary at the time of making the representations and ever since that date the capital stock of the company has been greatly impaired. That it was not true that the corporation had since its incorporation paid annual dividends out of its net earnings of not less than 20 percent, but on the contrary the corporation never at any time paid any dividends out of its net earnings, but in fact it had made no net earnings for many years past, practically since the year 1896. That it was not true that the $165,000 of the capitol stock of the corporation had been fully paid in, but that in fact not more than $100,000 of its authorized capital stock had been subscribed and paid for, and that all shares of stock in excess of $100,000 issued by the company were fictitious and issued without consideration to the stockholders of the company. That it was not true that the building and premises where the business of the company was transacted were fully paid for and wholly unincumbered, but that the building and premises were in fact then incumbered by a vendor's lien in favor of F. F. Collins for the sum of $50,000.

That plaintiff on or about the 1st day of January, 1904, first ascertained the falsity of the representations so made to him by defendants, and that as soon as he ascertained that they were false he demanded of defendants the return to him of the $6,000 together with the interest thereon from the 4th day of January, 1902, paid to them by him for

said shares of stock. That defendants failed and refused to comply with such demand, whereby plaintiff averred that he is entitled to rescind the purchase of the stock and recover from defendants the sum of $6,000 with interest as aforesaid.

After interposing exceptions, a general denial and a plea of the two years statute of limitation, the defendant Collins answered specially that it was true as alleged, he sold to plaintiff sixty shares of capital stock at the time stated in the F. F. Collins Manufacturing Company, for the sum of $6,000 paid to him therefor by the plaintiff, but that the sale of the stock so made by him to plaintiff was in open market, and that the dealings between them were at arms-length, and that neither he, nor any one acting as his agent with his authority, ever made the alleged false or fraudulent representations to plaintiff in regard to the financial condition of said corporation, or as to its net earnings, or as to the value of said stock, or as to the premises on Houston Street in which the business of the company was carried on being free from encumbrances of liens; that the plaintiff, in making said purchase, acted upon his own judgment, and was not moved and induced thereto by defendants or any agent of either authorized to make any such representations as an inducement to plaintiff to purchase said stock as are alleged by him in his petition. That after the purchase was made the plaintiff had full and ample opportunity to acquaint himself with the financial condition of the corporation, and the value of its capital stock and to ascertain whether the alleged representations made to him (if such representations were made, which is denied) were true or false, and that by failing to avail himself of such opportunities and ascertain the facts in regard to the truth or falsity of such representations for over two years after the purchase of such stock, he acquiesced in and ratified the sale and was therefore precluded from rescinding it and from recovering the purchase money paid by him for said shares of stock.

The F. F. Collins Manufacturing Company answered by adopting the allegations in the answer of its codefendant. After the evidence was concluded the plaintiff dismissed as to said company.

The case as to appellant was tried before a jury, and the trial resulted in a judgment against him for the sum prayed for in the petition.

*Conclusions of Fact.*—From reading and duly considering the evidence contained in the transcript of the record, we have concluded that it is reasonably sufficient to prove, as against appellant, all the material allegations made by plaintiff, and that it fails to establish any of the defenses plead by the appellant.

*Conclusions of Law.*—The first assignment of error complains that the court erred in overruling defendant's special exception to plaintiff's first amended original petition, for the reason it declares generally that defendant individually and as president of the company and by duly authorized agents fraudulently misrepresented certain facts in regard to the corporation, but fails to state specifically whether plaintiff relied solely upon the representations made by the parties alleged to have been such agents, or whether he relied solely upon the statements made by defendant individually or in his representative capacity.

Plaintiff's trial amendment of his first amended original petition

alleges that the representations made to him in reference to the stock he purchased, as shown in his first amended original petition, were material and that at the time of said purchase he relied upon said false representations and was thereby induced to purchase said stock; that he was ignorant of the fact that such representations were false, and that he was actually deceived thereby. When these allegations are read into the petition amended by them we can not perceive any merit in the assignment.

It is apparent from the pleadings of the plaintiff that he relied upon the truth of all the representations, whether made by defendant's agents, by himself as an individual, or as a representative of the corporation, and, being ignorant of the fact that they were untrue, was induced by them to purchase the sixty shares of the company's stock from the appellant. We know of no rule of pleadings which requires, or even permits, a pleader to make illogical and inconsistent averments in stating his cause of action. Had plaintiff alleged that he relied solely upon the representations of defendant's agents, he could not then aver that he relied solely upon the representations made by defendant either individually or as a representative of the company; for one allegation would neutralize and wholly destroy the other. In pleading, consistency is a jewel so treasured by law that when found it will not entertain an exception which complains of it.

By the second, fifth, ninth and eleventh assignments of error it is contended that certain testimony, most of which was drawn out on cross examination by the plaintiff of the defendant's witnesses Price, Seeligson, J. N. Brown and of defendant himself, which tended to show the financial condition of the F. F. Collins Manufacturing Company subsequent to January, 1902, and that in 1904 or 1905 practically all its assets had disappeared and it had ceased business and was in liquidation, was irrelevant, and inadmissible for any purpose.

The issue in this case was *fraud* and the burden of proving it was upon the plaintiff. From its very nature, it is usually impossible to prove it by direct and positive evidence, and, for this reason, a large latitude is permitted in the admission of evidence on such an issue. Evidence of facts not themselves directly in issue are admissible where such facts are relevant to the fact in issue. Such facts may be in *time* remote from the principal fact; but, where taken together and connected with other facts, they may form links in an unbroken chain of circumstances extending back to the time of the occurrence of the main fact, and establish its existence by showing that each link in the chain of facts extending from it was but the sequence of which it was the parent or proximate cause. If it be shown that in May, 1905, a corporation which was in January, 1902, represented by its president as being in a prosperous condition, paying from its net earnings annual dividends of 20 percent upon its capital stock, is out of business and practically without assets, when it is questionable whether any cause has been shown for such an overwhelming disaster, can it not be inferred from such facts, taken in connection with others, that such representations were not true, but that its depleted condition in 1905 was but an index of its condition in 1902? Such testimony certainly tends in some degree to show such representations were not true. Such tendency

authorized its admission as evidence. The degree of its probative force was for the jury to determine, and is a matter of no concern to this court. Men do not gather figs from thorns or thistles, nor did plaintiff pocket dividends from the capital stock he was induced to purchase by such representations. The assignments are overruled.

The third assignment of error is directed against the action of the court in allowing to be read in evidence, over appellant's objection, the answer in the deposition of plaintiff to the fourth interrogatory, which answer is as follows: "F. F. Collins told me repeatedly before the 4th day of January, 1902, that the stock of F. F. Collins Manufacturing Company was a splendid investment. He said for every year since its incorporation the company had never paid a dividend of less than 20 percent per annum, and sometimes as much as 50 percent; that it never paid less than a dividend of 12½ percent in stock and seven and a half (7½) percent in cash. Collins told me also for every dollar of capital stock that was issued by the F. F. Collins Manufacturing Company, the F. F. Collins Manufacturing Company got a dollar in money or property. That the company had a dollar's assets for every dollar's worth of capital stock it had issued. He also stated that the F. F. Collins Manufacturing Company had assets amounting to $165,000 for which it had issued stock. That the F. F. Collins Manufacturing Company did not owe a cent to anybody. He told me, too, that the lot and buildings, in which the business of the F. F. Collins Manufacturing Company was conducted, belonged to the F. F. Collins Manufacturing Company and not a dollar was owing on it. It is impossible for me to tell the different times I had conversations with Mr. Collins with reference to the Collins Manufacturing Company and purchase of this stock, but I saw Mr. Collins frequently before I purchased the stock, and he told me in every conversation I had with him substantially what I have stated with reference to Collins Manufacturing Company and of the value of the capital stock and the way it paid dividends. Mr. Collins also told me that he did not care very much about selling the stock, but that he had an opportunity to erect a building on the property on Houston Street, then owned by him, and he concluded that if he sold the stock he would use the money by improving that property. Both W. B. McMillan and Frank Grigg urged upon me the desirability of this stock in the Collins Manufacturing Company as a good investment; that it had always paid dividends of not less than 20 percent per annum; they told me also that the lands and buildings, where the business of the Collins Manufacturing Company was conducted, belonged absolutely to F. F. Collins Manufacturing Company and was wholly unencumbered and that the F. F. Collins Manufacturing Company did not owe a dollar."

The objections urged are, that the answer relates to prospective profits of the corporation, and embodies an opinion and conclusion as to the character of the investment, while no one could determine what the prospective profits would be; and that the conclusion as to the character of the investment is expressed in the words: "that it is a splendid investment," which seeks to show earnings anticipated; that, besides, the testimony was unauthorized by the pleadings, and tended to prejudice defendant's cause before the jury.

We have no doubt that the testimony complained of was pertinent to the subject of inquiry and tended to elucidate and make clear the question at issue. A statement that a purchase of property "is a splendid investment," made at the same time and in connection with representations as to conditions from which, if true, would necessarily follow the conclusion expressed by such statement, can not, if erroneously admitted in evidence, be prejudicial. But since it forms a part of and gives color to the representations as an entirety, it can not be taken as "hot air" or regarded as puffing; but must be considered as a part which goes to make up the whole of the representations. Further than this, it can not be taken as a statement or representation of prospective profits on the investment. Every one must necessarily conclude that stock in a corporation whose assets are unencumbered and which is paying, and has paid for years, annual dividends of 20 percent from the net earnings of the concern, is a splendid investment. A representation of the facts from which such inevitable conclusion follows, is but a statement from which the present value of the stock can be determined; and not a representation of its prospective worth or future earnings. Stock of a corporation which yields no dividends, and its property is absorbed by debts is worse than valueless. For the value of corporate stock can only be estimated by the value of the property of the corporation and the dividends it will pay. Dividends that have been paid, give nothing to the value of the stock, but serve only as *criteria* for estimating future dividends; and it is in expectation of future dividends that one is, ordinarily, induced to purchase corporate stock. If, then, a purchaser, who seeks to rescind a sale induced by fraudulent representations, is precluded from showing the value of the stock from representations as to the condition of the corporation at the time of his purchase, and its real value at that time, because such showing involves prospective profits or loss, he can prove nothing in support of his cause of action; and would find himself, though in a court of law, like the dog in the fable who lost the substance by vainly snatching at the shadow.

This disposes also of the fourth assignment of error which, upon the same grounds, complains of admitting in evidence the following testimony of plaintiff: "I was first induced to consider the purchase of the stock by Mr. McMillan, as I had $7,000 to invest I had collected on a former mortgage, who represented to me the stock as a fine investment making the representations I have already stated. I then called on Mr. F. F. Collins and told him I had been considering a purchase of some stock in his company, and he made practically the same statements that Mr. McMillan had made, and which I have already stated; and upon these representations I was influenced to buy the stock. I never would have bought the stock if I had not thought that Mr. Collins and his agent was telling the truth about the condition of the F. F. Collins Manufacturing Company, and that it was in fine business condition, and that this money was to be used in improving other property, and that it was a fine investment." Besides, this testimony tends to show that appellee relied upon, and was induced by the representations of appellant and his agent to purchase the stock of the corporation. This it was essential for plaintiff to show, and it need not be said that, on this issue, the testimony was clearly competent and relevant.

The testimony of the witness Price, which is made the subject of the sixth assignment of error, was not obnoxious to the objections urged against its admission in evidence. The witness was, and had been for the past few years prior to the time of trial, the bookkeeper, secretary and treasurer of the F. F. Collins Manufacturing Company. He had testified as a witness for defendant that the concern had earned net profits since its incorporation up to and including 1897 aggregating $191,132.32 and that it had earned net profits from 1897 to January, 1902, aggregating $71,733.53. It appears that this testimony of the witness was based on the books of the company. In view of it, we have no doubt but that it was competent to ask the witness on cross-examination the question: "As a matter of fact is it not true that during the whole of the time you were connected with the F. F. Collins Manufacturing Company, its earnings were not sufficient to pay off the debt due F. F. Collins as a part of the purchase money for the plant where the business was conducted?" and that his answer—"Yes"—was competent and relevant testimony. No one, from his relation to the company, could better know its financial condition than the witness; and his answer tends to show that the company was not in a prosperous financial condition at any time while Mr. Price was one of its officers and in its employment.

The testimony of the witness, C. S. Austin, who had been the general manager of the concern, showing that the company, on December 15, 1901,—just two weeks prior to the date of sale of the stock to appellee—owed its officers and employes over $7,000, was admissible for the same purpose; and, to our minds, when such testimony is taken and considered with the fact, and others of equal potency, that there was no net gain to the corporation for the year 1902, but, on the contrary, a net loss of $14,493.66, such testimony is very cogent.

It was certainly admissible to prove by the plaintiff that at the time he purchased the stock he really believed that he was buying stock at par which had paid, and would pay, 20 percent per annum. This testimony may show the plaintiff to have been a very credulous individual. But it must be remembered that the credulity of the public is ofttimes the basis of sale of corporate stock. And that representations as to its business are often so glowingly pictured as to form a base of credulity from which "young man can dream dreams, and old men see visions" of wealth. The question of belief was one of fact for the jury. If established, it must have been induced by the representations of defendants and their agents. That it was so induced, was an essential fact to be established in order for the plaintiff to recover.

By the tenth assignment of error it is contended that this court should not have permitted the plaintiff on cross-examination to elicit the testimony from defendant's witness, M. Krueger, embodied in the assignment, which is as follows: "That supposing in January, 1902, the books showed there were $163,700 of assets over and above the liabilities, or, in other words, equalled the capital stock outstanding in January, 1902; and supposing that in May, 1903, there was not a vestige of the assets to be applied to the payment of the stock, that everything was gone, in the absence of some explanation to the contrary, it would indicate that in January, 1902, there was a gross over-valuation of the

company's assets;[2] the contention being that the hypothesis, upon which the conclusion of the witness as to what would be *indicated* is based, is not authorized by the evidence; and that such testimony does not tend to prove any facts warranted by the pleadings. Similar testimony of the witness J. N. Brown was objected to upon the same grounds.

It is not essential that the hypothetical facts, upon which an expert bases his opinion or conclusion as to the existence of a fact sought to be established, should be uncontroverted. It is enough that there is evidence from which the jury may find the existence of supposed facts. If there is, then, upon the hypothesis that they will be found to exist, an expert may give his opinion as to whether or not such facts go to establish the ultimate fact sought to be proved. When the evidence in the record is read and considered, we believe it will be found sufficient to support the hypothesis upon which the witnesses based their conclusion, that in January, 1902 (assuming the existence of the supposed facts), there was a gross over-valuation of the assets of the company. Each of the two witnesses had testified from his knowledge of the company, based upon its financial statements, that the stock was worth above par in January, 1902. Neither pretended to know aught of the value of the stock save, as experts, from such knowledge as he gained from the statements made from the books of the concern. Their opinion was predicated on the correctness of the statements made from the company's books. If the statement upon which the opinion was based was incorrect, the opinion as to the value of the stock based upon a false hypothesis was worthless. When a different hypothesis is presented, a different opinion is expressed. It was certainly admissible, at least on cross-examination, to weaken the value of the opinion of these witnesses by showing the falsity of the hypothesis upon which it was based, i. e., there was a gross over-valuation of the company's assets in 1902; and it was permissible to show this by proving their opinion as experts upon the hypothesis that a different state of facts existed, when there was evidence from which such a different state of facts could be found.

The testimony of W. C. Price, the admission of which is complained of in the twelfth assignment of error, was admissible as a circumstance tending to show that the company did not have in January, 1902, assets sufficient to authorize the representations, made at the time appellant sold the sixty shares of stock, to appellee, that the company was in a prosperous condition. No more competent persons than the secretary, treasurer and bookkeeper of the company could be found to prove the fact that it would take practically all the assets of the company to pay its debts, and that there would be nothing left to the stockholders.

It was permissible to prove by appellant on cross-examination how the business of the corporation was managed, the amount of salary paid to any of its officers, etc., as was done by the testimony complained of in the thirteenth assignment of error; for the management of a corporation and the annual salary paid an officer may affect its financial condition and, consequently, the value of its capital stock at a given time.

What we have said in disposing of the seventh assignment of error

applies with equal force to the fourteenth, which complains of the admission of the same character of testimony.

By the fifteenth assignment of error the appellant insists that the court erred in not permitting the witness, J. N. Brown, to state what the reasonable value of the stock of the F. F. Collins Manufacturing Company was on January 4, 1902, over appellee's objection that the witness should first have qualified himself by stating that he knew what the reasonable value was. It is unnecessary for us to pass upon the force of this objection, or the ruling of the court upon it; for when we turn to page 42 of appellant's brief we find it stated from the record that the witness did testify to the value of the stock in the following language:

"J. N. Brown says: 'Up to the middle of 1902 I considered them in a prosperous condition. With my knowledge of this business, and with the statements for the years 1896, 1897, 1898, 1899 and 1901, up to 1902 showing respective gains, in 1896 of $4,627.73; in 1897, $1,892.56; 1898, $24,338.98; 1899, $27,883.04, and 1901 to January, 1902, at net gain of $518.95, and that in January, 1901, the capital stock was $200,000, and the surplus then was $2,136.25, considering the net gains for the previous years and with my knowledge of the business, I would consider January, 1902, from 90 to 100 cents a fair and reasonable value of the stock of the F. F. Collins Manufacturing Company, and I would have advised any one who came to me and asked me whether or not I thought they could buy that property and make a reasonably good investment at the price, that I thought it was a good investment.'"

The sixteenth assignment of error complains of the court's refusing to reprimand counsel of appellee for asking a witness a certain question, an objection to which, made by appellant's attorney, was sustained. The propriety of asking the question, further than is raised by the assignment, is not involved. As to whether it was such as called for a reprimand, was a question entirely within the province of the trial judge to determine, and his action upon it not subject to review by an appellate tribunal. It may have been "balm to hurt minds" for appellant and his counsel to have testified to a reprimand publicly administered by the court to a member of its bar, but it is beyond our jurisdiction to extend them any solacium for the loss of such pleasure.

It is contended by the thirtieth assignment of error that the judgment of the trial court should be vacated because of language used by counsel for appellee in his closing argument to the jury, which is as follows: "Every cent of money of the Collins Manufacturing Company has gone and will go into the well-filled coffers of F. F. Collins;" and, "every time the truth was sought to be elicited on the trial of this case the attorney for the defendant always objected to the truth being shown, and half of the time has been taken up on this trial by attorneys for defendants in trying to suppress the truth." By special charges, Nos. 24 and 25, the jury were instructed to disregard such language. Assuming, as held by the trial court, that the remarks in question were unauthorized by the evidence, it must be presumed in favor of the judgment that they were, in obedience to the instructions, disregarded by the jury and in no way affected the verdict.

The question raised by the seventeenth assignment of error is in-

volved and passed upon adversely to appellant in other assignments already considered.

The subject of the eighteenth assignment of error is the first paragraph of the court's general charge, which is as follows:

"If you believe from the evidence that on or about the 4th day of January, 1902, plaintiff purchased from defendant F. F. Collins, sixty shares of the capital stock of the F. F. Collins Manufacturing Company, and paid therefor the sum of $6,000; and if you also believe from the evidence that W. B. McMillan was the agent of F. F. Collins, and that prior to the time plaintiff purchased said stock, the defendant F. F. Collins, represented and stated to plaintiff that the F. F. Collins Manufacturing Company was in a .prosperous financial condition; that ever since its incorporation said corporation had earned as net profits and had paid to its stockholders not less than twenty percent per annum as dividends; that the authorized capital stock of said corporation was $200,000 and that $165,000 thereof had been subscribed and fully paid in; and that the building and premises situated on East Houston Street in the city of San Antonio, Texas, where the business of said corporation was transacted, belonged to and was the property of said corporation, and was fully paid for and unencumbered; and if you also believe from the evidence that such representations, if they were made, were material, and that in the purchase and payment of said stock, plaintiff relied upon the truth of such representations, if they were made; and if you further believe from the evidence that at the time plaintiff purchased said stock, said F. F. Collins Manufacturing Company was not in a prosperous financial condition, but that the value of the capital stock of said corporation at that time was impaired; and that said corporation had not since its incorporation, paid dividends out of its net earnings to stockholders of 20 percent per annum; and that the building and premises on East Houston Street, in the city of San Antonio, Texas, where the business of said corporation was then transacted, was not fully paid for and unencumbered, but that said property was then encumbered by a vendor's lien in favor of F. F. Collins in the sum of $50,000; and if you also believe from the evidence that within two years after plaintiff discovered, or should have discovered, that such representations were false, if you find° that such representations were made to plaintiff and were false, plaintiff instituted this suit to rescind such purchase and sale, then I charge you that your verdict must be for the plaintiff for the sum of $6,000, together with 6 percent interest thereon from the 4th day of January, 1902, to this date; but, unless you so find, your verdict should be for the defendant."

It is urged that this part of the charge is erroneous because it is alleged in plaintiff's petition, "that the aforesaid representations so made to him were untrue and false and said defendants and each of them knew, at the time said representations were made, that same were untrue and false," and that, under such averments, it was essential for the plaintiff to prove, not only that the representations were false, but that they were *known* by defendant to be false when he made them, and the charge wholly fails to submit such issue of knowledge to the jury.

If it was not necessary to allege knowledge on the part of the defendant of the falsity of the representations at the time they were made,

it was not necessary to prove guilty knowledge or submit it as an issue to the jury. If, on the other hand, as contended by appellant, it was an essential issue, the failure of the court to submit it for the determination of the jury was an affirmative error. The rule is general, except as to allegations of essential description, that, whatever may be alleged by the pleader as a cause of action or ground of defense, it is only necessary to prove such allegations as are necessary to constitute a cause of action or establish the defense. Whatever else is alleged is regarded as surplusage and need not be proven. If the facts which constitute fraud are set forth with an averment of the injurious result, the case is sufficient on the pleadings; and a detail of the circumstances which tend to establish a dishonest intent in the conduct of the other party may be properly left for production in taking the evidence. (Bigelow on Fraud, 117.)

"It is now a settled doctrine of the law that there can be no fraud, misrepresentation, or concealment without some *moral* delinquency; there is no actual legal fraud which is not also a moral fraud. This immoral element consists in the necessary guilty knowledge and consequent intent to deceive—sometimes designated by the technical term, the *scienter*. The very essence of the legal conception is the fraudulent intention flowing from the guilty knowledge. No misrepresentation is fraudulent at law, unless it is made with actual knowledge of its falsity, or under such circumstances that the law must necessarily impute such knowledge to the party at the time he makes it." But, "it is fully settled by the ablest courts, English and American, that there may be actual fraud in equity without any feature or incident of *moral* culpability; that the actual fraud consisting of misrepresentation is not necessarily immoral. A person making an untrue statement, without knowing or believing it to be untrue, and without any intent to deceive, may be chargeable with actual fraud in equity." It is settled in equity by an overwhelming array of authority that where a person makes a statement of fact, which is actually untrue, and he has at the time no knowledge whatever of the matter, he is chargeable with fraud, and his claim to have believed in the truth of his statement can not be regarded as at all material. "If a statement of fact, actually untrue, is made by a person who honestly believes it to be true, but under such circumstances that the duty of knowing the truth rests upon him, which, if fulfilled, would have prevented him from making the statement, such misrepresentation may be fraudulent in equity, and the person answerable for such fraud; forgetfulness, ignorance, mistake can not avail to overcome the pre-existing duty of knowing and telling the truth." Pomeroy's Eq., secs. 884, 885, 887, 888.

It must be remembered that this is not an action at law for deceit, where it is necessary to prove that the person making the false statement knew it to be untrue, or was recklessly and consciously ignorant whether it was true or not; but an equitable action for rescission of a contract, in which the equitable principles govern in estimating and determining fraud. When such principles as we have quoted are applied to the pleadings and evidence in·this case, it seems to us that the objections urged to the part of the charge quoted are untenable.

It is to be observed that the undisputed evidence shows that appellant

was, from the date of the charter down to the time he sold the stock in question, the president of the F. F. Collins Manufacturing Company. From the very nature of his office and his duties incident to it, as well as his ownership of the stock sold, it was his business to know whether the representations made by him and his agents to the appellee were true, for they were in regard to matters that equity charged him with knowledge of; and if his representations were false, though he may have believed them to be true, he is chargeable with knowledge of their falsity, and responsibility for the consequences to a party to whom made, who relied, acted upon and was misled by them into the purchase of worthless stock. There can be no question that the evidence in this case was sufficient to warrant the jury in finding that the representations were material; (Pridham v. Weddington, 74 Texas, 354; Cruess v. Fessler, 39 Cal., 336; Crossland v. Hall, 33 N. Y. Eq., 111; O'Donnell Brewing Co. v. Farrar, 163 Ill., 471, 45 N. E. Rep., 283; Boles v. Merrill, 173 Mass., 491, 53 N. E. Rep., 894; Handy v. Waldron, 19 R. I., 618, 35 Atl. Rep., 884); that they were made for the purpose of inducing appellee to buy the stock; that they were untrue; that appellee believed them to be true, relied upon and acted upon them in making the purchase. That the form of such representations were as statements of fact, is apparent from the statements themselves. It is thus seen that the charge in question, conceding that the evidence is such as charged appellant with knowledge, submitted to the finding of the jury all of the constituent elements of fraudulent misrepresentations. It would have served only to mislead and confuse the jury to have submitted as an issue the knowledge of appellant of the falsity of the representations, since under the undisputed facts, if the representations were false, equity charges him with knowledge of their falsity.

Again, it is objected to the charge that it was error for the court to tell the jury that if they should "find from the evidence that within two years after plaintiff discovered or should have discovered that such representations were false, etc." (other facts concurring), plaintiff should recover; upon the ground that it tended to confuse the jury and mislead them into believing that appellant's defenses of acquiescence and ratification could not be considered. There was no affirmative error in this part of the charge. It was clearly a limitation on plaintiff's right of recovery. It merely submitted the question of two-years limitation pleaded by appellant. It did not militate against any defense plead by him. In addition to the court's general charge, a number of special charges were given at the instance of appellant, and if any were requested and refused upon the defenses of ratification or acquiescence they do not appear in the record.

The other objections made to the charge have been disposed of by what we have already said, which also involves and disposes of the question raised by the nineteenth assignment of error.

Special charge No. 8, the refusal of which is made the basis of the twentieth assignment of error, is upon the weight of evidence in that it instructs the jury as a matter of law that if appellee at the end of one year knew no dividends were declared he was put upon inquiry of the truth of the matters complained of by him. There is no rule of law which prescribes a definite time within which diligence should be

exercised, nor at what particular time in the progress of the contract fraud should be discovered. (Am. Freehold Ld. & Mortg. Co. v. Pace, 56 S. W. Rep., 377; Wheeler v. Baars, 15 So. Rep., 584; Backer v. Pyne, 30 N. E. Rep., 21.) What we have said in disposing of this assignment, and the principle enunciated by the authorities cited, also disposes of appellant's twenty-third assignment, which complains of the refusal to give a special charge obnoxious to the same objection.

There was no evidence which would warrant the court in giving special charge No. 16, requested by appellant. And special charge No. 21 is upon the weight of evidence and was properly refused.

The effect of special charge No. 22, requested by appellant, if given, would have been to require the jury to find for appellant upon evidence that the representation alleged, as to the dividends the stock had paid, was somewhat different from what was actually made, though all the other representations alleged had been proven as well as all other ingredients of fraud in connection with them, essential to plaintiff's recovery. For this reason, even should it be conceded that there was a material variance between the representation alleged and proved in regard to the dividends paid on the stock, we think the charge was properly refused.

Special charge No. 15, made the basis of the twenty-ninth assignment of error, was properly refused. See Wheeler v. Baars, 15 So. Rep., 584.

Special charge No. 13 was likewise properly refused. There was no evidence that plaintiff in making the purchase relied solely upon his own judgment uninfluenced by the representations of appellant.

Our conclusions of fact dispose of the remaining assignment. The judgment is affirmed.

*Affirmed.*

Writ of error refused.