GULF, W. T. & P. RY. CO. et al. v. ABBOTT.†

(Court of Civil Appeals of Texas. San Antonio. April 3, 1912. Rehearing Denied May 1, 1912.)

1. CARRIERS (§ 318*)—INJURY TO ALIGHTING PASSENGER—EVIDENCE.

In an action against a railroad company for injury to a passenger while alighting from a coach, evidence *held* to warrant a finding that the brakeman who attempted to assist was negligent.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

2. DAMAGES (§ 132*) — PERSONAL INJURY — EXCESSIVENESS.

Seven thousand five hundred dollars is not excessive recovery for an injury consisting in a fracture of the bones of the right thigh and hip, accompanied by partial paralysis of the leg, and resulting in pieces of bone working their way out through flesh and in permanent injury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 178, 372–385, 396; Dec. Dig. § 132.*]

3. EVIDENCE (§ 506*)—EXPERT OPINIONS—PHYSICAL CONDITIONS.

In a personal injury action, a physician testifying as an expert is properly permitted to state that a physical condition found in plaintiff was produced by a foreign body working out through the muscle; the testimony not being inadmissible as a conclusion and an invasion of the jury's province.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2309; Dec. Dig. § 506.*]

4. EVIDENCE (§ 553*)—EXPERT OPINIONS—HYPOTHETICAL QUESTIONS—SUFFICIENCY.

In a personal injury action, a hypothetical question submitted to a physician testifying as an expert as to the nature of the injury *held* based on matters legitimately drawn from plaintiff's testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2369–2374; Dec. Dig. § 553.*]

5. EVIDENCE (§ 528*)—EXPERT TESTIMONY—PHYSICAL CONDITIONS.

An opinion of a physician testifying as an expert in a personal injury action based on a hypothetical question is admissible to connect the cause and the proximate result of the injury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2335–2337; Dec. Dig. § 528.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

6. EVIDENCE (§ 553*)—EXPERT OPINIONS—HYPOTHETICAL QUESTIONS—BASIS.

All the facts assumed by a hypothetical question need not have been testified to; it being sufficient if the party expects to show them, or if it appears that afterwards proof in regard to such facts is made.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2369–2374; Dec. Dig. § 553.*]

7. EVIDENCE (§ 528*)—EXPERT OPINIONS—PHYSICAL CONDITIONS.

In a personal injury action, a physician testifying as an expert witness was properly permitted to state in reply · to a hypothetical question that a certain character of accident might cause serious injury to the pelvic organs.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2335–2337; Dec. Dig. § 528.*]

8. EVIDENCE (§ 509*) — EXPERT OPINIONS — PHYSICAL CONDITIONS.

In a personal injury action, it was not error to permit a physician testifying as an expert to state in reply to a question, where one has suffered injury like plaintiff's, and continues to suffer for about seven years, what is the probability of those conditions remaining permanent, that in such circumstances nature has done practically, everything that it can do.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2312, 2313; Dec. Dig. § 509.*]

9. EVIDENCE (§ 553*)—HYPOTHETICAL QUESTIONS—CONFLICTING TESTIMONY.

A hypothetical question on a question of physical condition may be based upon conflicting testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2369–2374; Dec. Dig. § 553.*]

10. EVIDENCE (§ 554*)—EXPERT OPINIONS—EXPLANATIONS BY WITNESS.

It is not improper to allow an expert witness, in giving an opinion in answer to a hypothetical question, to make an explanation of the reasons on which he bases his conclusion, unless he introduces matters not within the purview of the question.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2375; Dec. Dig. § 554.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Action by Alice Abbott against the Gulf, West Texas & Pacific Railway Company and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, Proctor, Vandenberge & Crain, of Victoria, Templeton, Brooks, Napier & Ogden and W. F. Ezell, all of San Antonio, and G. E. Pope and Fowler & Fowler, all of Goliad, for appellants. Emmett B. Cocke, W. A. Cocke, and C. C. Harris, all of San Antonio, for appellee.

JAMES, C. J. The second amended petition of Mrs. Alice Abbott alleged, in substance: That she was on or about March 31, 1904, a passenger on the train of defendant Gulf, West Texas & Pacific Railway Company between Victoria and Goliad, the latter point being her destination. That, when the train reached Goliad, in undertaking to alight therefrom she fell and sustained the injuries she alleged. That at said station the depot grounds were defectively con-structed, or in such bad state of repair that the lower step from where she alighted was at least 23 inches from the ground, a distance too great for passengers to descend in safety, especially a heavy and portly passenger as plaintiff was. That defendant failed at that time and place to have a stool or box on which to alight, which, in view of the distance to the ground and the fact that there was no platform, was negligence. That the brakeman offered his assistance, and undertook to help plaintiff to alight safely, by taking the hand of plaintiff, and thereby leading her to believe that he would render her all assistance necessary to enable her to alight in safety. That plaintiff relied on receiving from said employé such assistance, but, in rendering assistance, said employé was so indifferent to the safety of plaintiff, and so careless and negligent in the performance of the duty due by defendant to her, that he failed and refused to give to plaintiff that character of assistance necessary and proper to enable her to alight in safety from the coach. That because of the negligence of the defendant, in permitting and requiring plaintiff to step so great a distance from the lower step of the coach to the ground without a platform or stool, or box to assist her, and because of the failure and refusal of the said employé to properly, skillfully, and carefully assist plaintiff to alight, plaintiff, without negligence on her part, fell violently to the ground, in the act of alighting, receiving thereby painful and serious· injury to her right leg, extending from her foot to her hip, as a result of which her ankle, leg, and hip became highly inflamed, swollen, and painfully sore, confining plaintiff to her room and bed for many months, during which time she suffered great mental anguish and physical pain. That, in consequence of said fall, she suffered as above stated and great pain and suffering throughout her entire person, with partial paralysis of her right leg and various other specified injuries, not necessary to state here. That another result of the fall was to fracture and break the bones in plaintiff's thigh and hip, and·that about 18 months after the injury pieces of bone ranging in size from one-half inch to an inch and a half in length worked their way out to the surface of plaintiff's body, and were extracted therefrom. There was allegation of permanent injury in various respects. There were allegations of necessary and reasonable physicians' and nurses' charges for treatment, and hospital charges and for drugs and medicines; that plaintiff has been incapacitated from pursuing her occupation as a dressmaker and seamstress. There was allegation that since the accident the Gulf, West Texas & Pacific Railway Company, its line, and property were acquired by the Gal-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

veston, Harrisburg & San Antonio Railway Company, under the act of 1905, and the prayer is for judgment against the former, and that it be 'so framed as to run against all the property formerly owned by it, though the same may be in the latter's possession. Both corporations filed answer consisting of general demurrer and general denial. The verdict was for plaintiff in the sum of $7,500.

The charge of the court was that if a brakeman of defendant offered his assistance and undertook to assist plaintiff to alight in safety from the train, and that plaintiff relied on receiving from him such assistance, and that said brakeman was guilty of negligence in the manner in which he did assist her to alight, and because thereof plaintiff fell to the ground and received any of the injuries alleged in her petition, and that such negligence, if any, of said brakeman, was the proximate cause of plaintiff's injuries, to find for plaintiff, otherwise to find for the defendant. It thus appears that the court excluded the other forms of negligence, and submitted the cause solely upon the alleged negligence of the brakeman.

[1] The first assignment is that there was error in submitting the case on the negligence of the brakeman, because all the testimony shows no negligence on his part, and that plaintiff's injury, if any, was due to her foot slipping on the bottom step and a fall necessarily resulting therefrom, and the brakeman cannot be held guilty of negligence because he did not prevent plaintiff from falling after her foot slipped. The plaintiff testified, as stated in appellants' brief: "The train stopped when I reached Goliad. I undertook to alight there. As I came out of the train or coach and came down the platform, I suppose in the usual way, I had a package in my left hand, a very small package, and I held by the handhold, and, as I came down the platform, the brakeman said, 'I will help you'; and he took me by my hand, and I came down, stepping down for a landing or footing, and my left foot slipped off the bottom step, and I came with all my entire weight on my right foot on the ground. My ankle turned, and I fell to my knee. As I fell, the brakeman caught me by my arm, but did not support me enough to keep me from falling. * * * When I started down the steps, the brakeman tried to assist me. He took me by the hand—just by the hand—and I stepped down. It was my right foot with which I undertook to make the ground. I had not gotten my right foot to the ground at the time the other foot up on the coach gave way. As to what the brakeman first did in his efforts to assist me, why, he extended his hand and took me by the hand, and, when I fell, he caught me by the arm. He said, 'I will help you,' and he took me by the hand, and I relied upon him for as-

sistance, of course. When I fell, I fell off the step on my foot, my entire weight coming on my right foot. My ankle turned, and I fell to my knee. I did not fall out flat or sprawling. I simply fell to my knee, and some one afterwards took hold of me and assisted me to get up. I suppose the brakeman rendered me some assistance in helping me to get up. I don't know. I don't know who assisted me to get up." In addition she testified that the distance down was not less than two feet, and that there was no box or stool provided for passengers to alight upon. And her witness Dial testified that the ground was sloping.

We are of opinion that her testimony was sufficient to raise the issue of the brakeman's negligence, and that her fall and injury were due to such negligence. He undertook and led plaintiff to believe that he would assist her to alight in safety, in circumstances which entitled her to rely on his doing so. According to the above testimony, and while she had her right hand on the handhold, he perceived there was danger, and that she needed to be assisted, and accordingly said, "I will help you," and took her by her right hand with his left hand. She relied on his helping her down in safety, but he, without doing anything more, allowed her to step toward the ground, which was about two feet down and sloping, with her right foot, and it was not, until, in the act of reaching down, when her left foot lost its hold and before her right foot had reached the ground, that he did anything further, and then he simply caught her by the arm, not giving her sufficient help to break her fall. The jury had the right, if they believed plaintiff's statement, to conclude that he negligently performed what he had offered and led her to believe he would do for her. If he offered and undertook to assist her in the act, it was to prevent her from being injured, not only to assist her after she had commenced to fall, but to prevent her from falling. The danger that was apparent to him was that she might fall, and be hurt on account of the height of the step and the character of the ground, and reasonable effort was due from him to prevent a fall from any mishap. What he did was to have her release her grip from the handhold and rely upon him. He took her hand or her arm with his left hand, which was simply placing himself in readiness to do something to arrest any fall that she might have, and, after she began to fall, he even then did nothing further than to take her by the arm. The jury had the right to conclude that he did not do what was reasonably necessary to break the fall after she commenced to fall, and also that he did not do what was reasonably necessary and proper under the circumstances to keep her from falling in the first instance. It appears from the evidence adduced by plaintiff that Mr. Dial, who was at

the station, walked up to plaintiff to assist her down, when the brakeman reached to assist her. This is a case where defendant's employé actually undertook to perform the duty of assisting the passenger off, and negligently failed to perform it, as the jury had the right to find and did find. It has been held that a carrier may be negligent in failing to render a passenger assistance in alighting. Railway v. Miller, 79 Tex. 78, 15 S. W. 264, 11 L. R. A. 395, 23 Am. St. Rep. 308. If this is so, why is it that, when it assumes to perform such duty, it is not liable for not properly performing it? And in this connection we hold, also, that plaintiff's statement of the circumstances of the accident and the evidence she adduced in presenting her case did not develop or suggest contributory negligence on her part, and that, therefore, defendants were not entitled to have the issue of her contributory negligence submitted to the jury, in the absence of a plea of contributory negligence.

We therefore overrule the first, second, third, fourth, fifth, sixth, and eighth assignments of error.

[2] The seventh complains of excess in the amount of the verdict. We overrule this, finding that the testimony amply sustains the verdict in this respect.

[3] The assignments from 9 to 16, inclusive, complain of testimony of Dr. R. R. Le Master. The question and answer objected to were: "What in your judgment created the sinus that you have explained about? Ans. Why the condition showed every indication of its being produced by a foreign body working through the muscle." The answer was properly admitted, being the opinion of an expert physician upon a state of facts that he had testified about, and was not subject to the objection that it was a conclusion of the witness and invaded the province of the jury. The proposition that a physician cannot give an opinion on a state of facts which facts are controverted, is clearly untenable. Collins v. Chipman, 41 Tex. Civ. App. 563, 95 S. W. 666.

[4] For the reason above given, the first proposition under the tenth assignment is overruled. The second proposition under the assignment is that the hypothetical question propounded to the witness assumed that plaintiff's knee went violently to the ground, and also that the left foot slipped before the right foot could reach the ground. Both of these facts were facts legitimately to be drawn from plaintiff's testimony. It further complains that the question assumed that it had been shown by the evidence that bones had fractured from appellant's leg and worked to the surface of the skin, whereas the testimony did not show such fact. The question was: "Doctor, if the evidence in this case shows that there is a sunken place, or a hollow place, in the region of the hip of this plaintiff, having explained to you the character of the fall, you have waited on her, made several examinations, and the evidence further showing that pieces of bone worked out there and you having followed that sinus, what in your judgment caused that sunken or hollow place?" Appellant says in the statement in the brief that the evidence, so far as the case had proceeded, was simply that certain pieces of bone were extracted from the surface of plaintiff's leg. We find that plaintiff had testified: "The condition of the exterior part of my limb, just before I discovered the piece of bone that I undertook to pull out and broke off, was perfectly smooth, etc. * * * I think it was on Friday, and the day, the 11th or 12th or the 8th, when that little piece of bone made its appearance, and I undertook to take it out. Am pretty sure it was the 8th. We phoned for Dr. Herff. * * * He called Saturday night, and examined the place where I extracted this piece of bone; said there were more bones there that must come out. * * * As to the swelling and kind of protrusion on the hip that I have testified was on my leg at the time the bone came through, etc. * * * I discovered the sunken place, I think, after the bones worked out." This testimony of itself disposes of the proposition.

[5] The third proposition under the assignment is, in substance, that the opinion of an expert in answer to such an hypothetical question, "in a suit for damage for personal injury, is inadmissible in the development of plaintiff's prima facie case for the purpose of establishing the existence of such injuries, where the issue was not whether such character of accident could cause such injuries, but whether it did in fact cause the same." There is nothing in this proposition. Plaintiff was clearly entitled to adduce any testimony of a competent character to connect the cause and the proximate results of the injury. This the plaintiff was entitled to do in making out her case as well as at some other stage of the proceeding.

[6] In addition to what we have said upon this assignment, we may add that, in putting a hypothetical question to a witness, it is not essential that all the facts assumed have already been testified to, and it is sufficient if the party expects to show them or if it appears that afterwards proof in regard to such fact is introduced. Carroll v. Boston Elev. Ry. Co., 200 Mass. 527, 86 N. E. 794; Rice v. Dewberry, 93 S. W. 715. The tenth assignment is overruled.

For reasons already given, the proposition advanced under the eleventh is overruled, also the second proposition under the twelfth assignment.

[7] Under the twelfth the other proposition is as follows: "It being a disputed issue of fact whether appellee sustained any injuries save a sprain of the ankle, it was improper to permit Le Master, in reply to a

hypothetical question, to state as a fact that a certain character of accident therein described would cause injury to the pelvic organs, for the reason that said testimony states a conclusion and opinion, and invades the province of the jury." The answer was that it might cause serious injury to such organs. The conclusion or opinion of the expert in such matters is clearly admissible.

[8] The thirteenth assignment involves the following question and answer: "Dr. Le Master, where a person has suffered the injury you described to this jury in Mrs. Abbott's case, and evidence shows that she still suffers to this day, which covers a period of approximately seven years, what, in your opinion as a physician, is the probability of those conditions remaining, and what length of time, in your judgment, will they likely remain? Ans. Well, I would like to answer that this way if I am not invading, to my mind, after a lapse of seven years, nature has done everything, practically everything, that it is calculated to do; that would be rather my answer. I would like to put the answer this way: That I think with the sinus healed, and has been for some time, that nature, in the restoration of that hip, has done everything practicable, everything that it will ever do. I do not think time will have very much more effect; that is, nature cannot do very much more with the addition of time." The testimony which was introduced in the case furnished sufficient basis for the question and answer given to the question relative to the permanency of plaintiff's injuries. The answer was simply: "I would like to put the answer this way: That I think with the sinus healed and has been for some time, that nature in the restoration of that hip has done everything practicable, everything it will ever do. I do not think time will do very much more; that is, nature will not do very much more with the addition of time." It was not necessary for it to appear that the witness had testified that plaintiff had been injured in all of the particulars of the injury referred to. It is enough that those particulars had been or would be shown by evidence to relieve the testimony from the criticisms of this assignment. The answer of the witness related only to and was based upon the facts that there was a sinus which had healed, and that plaintiff still suffered from the injury after a lapse of seven years, which facts are developed in the evidence. The assignment is overruled.

[9] The fourteenth assignment complains of a hypothetical question to and answer by the same witness on a state of the evidence directed to obtaining his opinion based on that evidence as to the result the fall they indicated would have by way of injury to the sciatic nerve.

The fifteenth involves a like question and answer in reference to the effect such a fall would have on the nerve sheath or incasement of the nerve; and the sixteenth involves the same question directed to "that painful condition" of plaintiff.

We overrule these assignments and the propositions connected with them. Under the fourteenth the only proposition is that the question "assumed as a fact proven that plaintiff's right knee went violently to the ground, when the testimony did not show this fact." The fact was clearly indicated in the testimony. Under the fifteenth the sole proposition is "that whether or not plaintiff was injured in any manner save by a sprain to her left ankle was a controverted issue of fact," and therefore not the proper basis for a hypothetical question. Such question may proceed upon facts which the testimony, as has already been stated, is conflicting; all that is necessary being the existence of evidence in the record tending to show the fact. The same propositions are relied on under the sixteenth assignment, and they have been sufficiently discussed.

The eighteenth assignment is too lengthy to state. It complains of a hypothetical question propounded to Dr. Hadra and his answer thereto. We need only consider the propositions, which are merely a repetition of some already passed on. They are, first, that the question was improper because it assumed as a fact proven that appellee fell violently to the ground. This, as already stated, was plainly inferable from the testimony describing the accident; also that "it assumes as a fact proven that 15 or 18 months after the accident pieces of bone worked out from her hip, whereas this was not shown by the evidence, and, at least, it was a contested fact." If it was a contested fact in the evidence, it could properly be assumed in such a question, and there was evidence of it. The second proposition under the assignment is the same, to wit, that a certain fact assumed was a disputed fact. The assignment is overruled.

[10] Under the seventeenth assignment appellant complains of the manner in which the testimony of Dr. Hadra was developed. The proposition is as follows: "It was a violation of the trial court's discretion, and prejudicial error in this suit, to permit appellee, in rebuttal, to place upon the stand practically at the close of the rebuttal testimony a medical expert, and permit him, in response to an inquiry, as to what, in his opinion, was the cause of a depression which he said he had found in appellee's leg in an examination made by him of her person a few minutes before he began to testify (his opinion being asked in response to a hypothetical question stating the supposed manner in which the accident claimed to have caused certain injuries occurred, and the supposed history of her case subsequent to the date of said alleged accident), to deliver a long dissertation and argument in support

of appellee's contention, in no sense responsive to the question and based to a great extent upon assumptions shown to be beyond personal knowledge, and to base his opinion given in response to the question upon a preliminary statement in no sense responsive to the question, and involving alleged conditions not within his personal knowledge." The above is the only proposition under the assignment, and it does not complain at all of the question. The question sought to obtain the opinion of the witness as to what was the cause of the depression, a large marked depression, on the side of plaintiff's thigh, which he testified he found upon an examination of plaintiff's leg. The first and second objections to the testimony of this witness went to the question, and are not within the proposition. The third is that the testimony was not in rebuttal of any testimony offered. This also was not included in the proposition. There were objections during the course of the giving of the testimony of this witness, such as the answer was not responsive to the question, that it was argumentative. In one instance the court sustained an objection to a statement by the witness. Finally, when the witness had fully answered, over appellant's intermittent objections, an objection was made purporting to embrace all the objections with a motion to strike out; the grounds stated being as follows: "On the grounds that no portion of it is in rebuttal of any testimony that had previously been offered in evidence; that same was argumentative; that same is based on matters that the witness has absolutely no knowledge of, and is simply a dissertation or lecture of the witness upon the structure of the body, and is irrelevant, prejudicial testimony; that same is not responsive to the question propounded to the witness; that same is an argument of the witness; that same is not in rebuttal to anything that has been offered." It appears that this witness did not answer the question, as appellants say in another part of their brief he might have done in a dozen words. It appears that the witness desired to answer the question by not doing so in a few summary words, but by first explaining the parts of the human anatomy involved in the subject and tracing and explaining same and their relation to the subject, in order to make his answer understood. The court permitted him to answer in his own way, which appellant denominates was a lecture or dissertation on the subject. Passing on the proposition of appellant, we conclude that the answer was responsive, and that it was permissible for the court to allow the witness to answer the question with explanations. The witness, in his explanation, referred to and used "Gray's Anatomy," testifying that it was the standard all over the world on anatomy and accepted by all surgeons. We

suppose, though it is not so pointed out by the brief, that this was what the proposition refers to where it states that the answer was based, to a great extent, on assumptions shown to be beyond his personal knowledge. If appellants attached any importance to this last-named objection, they cannot complain of our not sustaining it when they have not pointed out nor explained what testimony of the witness it has reference to. The assignment itself is not briefed in a manner that entitles it to be considered, and we think we have given it more attention than we should have done. However, we will express the opinion that it is not improper to allow an expert witness, in giving his opinion or conclusion in answer to a hypothetical question, to make an explanation of the reasons, course of reasoning or grounds of his conclusion, unless he imports into the case material facts not within the purview of the question. Lawson on Expert & Opinion Ev. (2d Ed.) p. 269. Referring to the objection made to this testimony, which objection is above set forth, it will be seen that it was not claimed that facts or anything foreign to the subject were brought into the case by this witness. It would have been proper for the witness to answer the question by an ad captandum opinion in a few words, without explanations as is generally done, or to answer it in an explanatory and more intelligible manner. The reasoning or the grounds of such a witness' opinion may be called for by either party, hence it was not improper testimony, nor was it error for the court to permit him to do so in connection with the giving of his opinion.

The assignments Nos. 19 to 23 are not sufficiently briefed, but we overrule them, following what we have stated in discussing the preceding assignment.

Affirmed.