**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellant,**

v.

**Ida Bell MELTON, Appellee.**

No. 3451.

Court of Civil Appeals of Texas. Waco.

June 13, 1957.

Rehearing Denied July 25, 1957.

Leachman, Gardere, Akin & Porter, Dallas, for appellant.

Sanders, Nolen, Dees & Stevenson, Dallas, for appellee.

TIREY, Justice.

This is a compensation case. The jury found (1) that on the 28th of July, 1955, Ida Bell Melton sustained an injury as defined in the court's charge; (2) "Q. Do you find from a preponderance of the evidence that such injury, if any, sustained by Ida Bell Melton on the occasion in question, if she did, naturally resulted in her incapacity to work, in any percentage, for any length of time? Answer 'yes' or 'no.' Answer: Yes"; (3) "Do you find from a preponderance of the

evidence that such incapacity to work, if any, was or is, total (as explained herein) for any length of time? Answer 'yes' or 'no.' Answer: Yes"; (4) "Do you find from a preponderance of the evidence that such total incapacity, if any, was, or will be permanent or temporary (as defined herein)? Answer: Temporary;" (5) "From a preponderance of the evidence, how long do you find such total incapacity, if any, has continued or will continue, from the date of its beginning, if any? Answer in number of days and/or weeks, if any, in figures, or 'none'. Answer: (a) ——— days or (b) 360 weeks, or (c) ———. If you have answered Special Issue No. 3 'yes', then answer the following issue; otherwise, do not answer it. (6) that July 28, 1955 was the beginning date of total incapacity; (7) "Do you find from a preponderance of the evidence that such incapacity to work, if any, was, is or will be partial (as explained herein) from the date of such injury, if any, or from the termination of the total incapacity, if any you have found, for any length of time? Answer 'yes' or 'no.' Answer: No." (the court instructed the jury that if they answered Issue No. 7 "No," not to answer Issues 8, 9, 10 and 11); (12) that there was another employee of the same class as appellee working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or in a neighboring place; (13) that the average daily wage earned by such other employee for such employment was $8.00 per day; (14) "Do you find from a preponderance of the evidence that any disability you may have found in connection with Special Issue No. 2, if any you have found, in excess of two days, was not solely the result of arthritis? Answer: It was not."; (16) "Do you find from a preponderance of the evidence that any part of the incapacity you may have found in connection with Special Issue No. 2, if any you have so found, was not solely the result of arthritis? Answer: It was not."; (18) "Do you find

from a preponderance of the evidence that any disability you may have found is not due in any degree to a former injury?

Answer: It is not."

The court entered judgment on the verdict in behalf of appellee, and in the judgment we find the following recital:

"The court finds from said verdict, as supplemented by the stipulations of the parties and the admissions by defendant as facts that Ida Bell Melton sustained accidental personal injuries while working for the Denison Cotton Mill Company in Denison, Grayson County, Texas, in the course and scope of her employment on July 28, 1955, that naturally resulted in her incapacity to work; that at the time plaintiff sustained her injuries, the Denison Cotton Mill Company carried a policy of Workmen's Compensation Insurance issued under the Workmen's Compensation Act of Texas with Texas Employers Insurance Association that was in full force and effect and that plaintiff is entitled to recover benefits under said law for incapacity sustained by her on said date; that the cause of action herein was duly and timely filed and prosecuted before the Industrial Accident Board of Texas and said Board made its final award therein, that plaintiff timely gave notice of appeal from such award and within due time, as provided by law, filed this suit to set aside the same.

"The court further finds in accordance with the stipulations and admissions by the defendant and the evidence that the plaintiff was not engaged in the same or similar employment as that which she was performing for the Denison Cotton Mill Company for substantially the whole of the year preceding July 28, 1955, but worked only 245 days during said period. The court further finds that the average daily wage as found by the jury is $8.00

per day and 300 times the average daily wage gives an annual wage of $2400.00 and 1/52 part of said average annual wage is $46.15, that the court thereby finds that $46.15 is the average weekly wage upon which the compensation payable to plaintiff is to be based and that 60% thereof is more than $25.00; therefore, the court finds that 'the plaintiff has total incapacity for 360 weeks and she is entitled to recover the sum of $25.00 per week for 360 weeks from and after July 28, 1955, the court further finds that the beginning date of such total disability is July 28, 1955, and the court finds that a period of 44 weeks at $25.00 per week have accrued to date; that the plaintiff has been paid 5 weeks of compensation at the rate of $21.60 per week, making a total of $108.00 heretofore paid and defendant should have credit for such payments made; that plaintiff is entitled to interest at the rate of 4% per annum on such accrued payments, the first payment having become due on July 28, 1955, making a total of $1,006.-56 due on May 31, 1956, after crediting defendant with payments already made; the court further finds that the plaintiff is entitled to receive the sum of $25.00 per week from May 31, 1956, for a total of 316 weeks, making the total amount of this judgment in favor of plaintiff against defendant the sum of $8906.56."

The court decreed:

"* * * that plaintiff do recover of and from the defendant five (5) weeks of compensation accrued to date in the sum of $3.40 each and the same being the difference between the rate of compensation heretofore paid and the amount actually due, making a total of $17.00 and that plaintiff further recover of and from defendant the further sum of 39 weeks of compensation accrued to May 31, 1956 in the sum of $25.00 per week, together with interest thereon at the rate of 4% per annum in the further sum of $14.56, all in the sum of $989.56, and that plaintiff further recover against defendant the sum of 316 weeks of compensation accruing in the future in the amount of $25.00 each week, making a total of $7,900.00 to accrue in the future, the first payment being due and payable on the 7th day of June, 1956, and the remaining 315 installments are due and payable at the rate of $25.00 each week on Thursday of each week thereafter until the full amount of $7,900.00 is paid, allowing interest thereon at the rate of 4% per annum on any payment due and unpaid on the due date.

"It is further ordered, adjudged and decreed by the court that the final ruling and decision of the Industrial Accident Board, of the State of Texas, rendered in the claim of Ida Bell Melton, Employee vs. Denison Cotton Mill Company, Employer, and Texas Employers Insurance Association, Insuror, No. 0-49830, on the 13th day of January, 1956, be and the same is hereby vacated and set aside."

The court further decreed ⅔ of the award to appellee and ⅓ to her attorneys.

Appellant seasonably filed its amended motion for new trial and, it being overruled, perfected its appeal to the Dallas Court of Civil Appeals and the cause is here on transfer order of our Supreme Court.

Appellant assails the judgment rendered on eight points. They are substantially: The court erred (1) in permitting appellee to testify that she would never be able to go back and do the kind of work she knows how to do; (2, 3 and 4) in permitting Dr. Schoolfield to testify to the full history of her injury as related to him by appellee, and in permitting Dr. Schoolfield to testify to his opinion of the disability of appellee, based upon and taking into consideration matters of fact related to him by her, and in permitting Dr. Schoolfield to give his

opinion as to disability of appellee in answer to hypothetical questions containing assumptions not in evidence; (5 and 6) in permitting appellee to file a trial amendment alleging an increased average weekly wage of $46.89, and in refusing to permit appellant to withdraw its announcement of ready and to grant its motion for continuance after the filing of plaintiff's trial amendment; (7) "in charging the jury in its initial charge that 'You are called on to answer some questions as to particular facts in the case, from the evidence which you heard in the trial'"; (8) in instructing the jury in the supplemental charge that "you must answer the special issues as you find the facts to be and you are entirely free to make any answer to any special issue in the court's charge as you may find from a preponderance of the evidence, and you will return to your room and reconcile your answers," thereby misplacing the burden of proof on all issues.

■ Returning to a discussion of appellant's Point 1, we have carefully read the testimony of appellee and we do not believe that Point 1 was raised in the court below. We quote in Question and Answer form a part of appellee's testimony:

"Q. Have you done any work for anyone, made any money since you were injured? A. No, sir.

"Q. On July 28, 1955? A. No, sir.

"Q. Do you feel like that you were able to go and do any kind of work during that period of time? A. No, sir.

"Q. Do you feel like that you are ever going to be able to go back and do the kind of work that you know how to do? A. No, sir, I sure don't.

"Q. Why not? A. Because my back won't let me. My back is in too bad a shape to ever try to do any more work."

After the above answer, Mr. Leachman, attorney for appellant said: "Your Honor,

I think we'll object to that last question and answer. It's asking for a broad conclusion on the part of this witness, and she does not qualify as an expert witness to express an opinion on such matters as that." The objection of appellant was overruled.

It is true that appellant, in its amended motion for new trial, alleged:

"The court erred in permitting plaintiff to testify, over objection of defendant, that she would never be able to work again, such testimony being an invasion of the province of the jury and the same being opinion evidence of a witness not qualified as an expert."

We overrule appellant's contention in this behalf for reasons which we shall hereafter briefly state.

First of all, we think the record shows without dispute that appellant objected only to the specific question, "Why not?" and the answer, "Because my back won't let me. My back is in too bad a shape to ever try to do any more work," and did not specifically object to the question, "Do you feel like that you are ever going to be able to go back and do the kind of work that you know how to do." and the answer, "No, sir, I sure don't." As we understand appellant's point, the last quoted question and answer are the ones it now complains of. It is our view that the question of whether or not appellee would be able to go back and do the kind of work that she had been doing heretofore is testimony only of an evidentiary nature; it is not solely a question of expert testimony. For example, if a doctor had testified to the effect that she would not have been able to go back and do such work again, it would have been only evidentiary and not conclusive under the doctrine announced by our Supreme Court in Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345, 346, points 1–3. In that case our Supreme Court held that "opinion testimony does not establish any material fact as a matter of law." We think the objection went

to the weight of the testimony and if objection had been timely made to the testimony here complained of, it should have been overruled. Moreover, appellant did not file motion to strike any of the testimony above quoted. In 19 Tex.Jur. 355–361, sec. 232, we find this statement: "And it is well settled that an injured person as well as any observer may testify as to the effect of impaired physical conditions on the ability to work or to perform the ordinary functions of daily life," citing many cases. See also Texas Employers Ins. Ass'n v. Agan, Tex.Civ.App., 252 S.W.2d 743 (writ ref.).

■ Points 2, 3 and 4 complain of certain errors relating to the testimony adduced by the witness, Dr. Schoolfield. We have carefully read the testimony of Dr. Schoolfield and it is our view that Points 2, 3 and 4 are without any merit.

In appellant's amended motion for new trial, the second point of error complained of is as follows:

"The court erred in permitting plain-tiff's Dr. Schoolfield to testify to the full history of plaintiff's injury as related to him by plaintiff over defendant's objection. Such evidence being hearsay and repetitious of plaintiff's testimony."

As we understand appellant's point, the testimony and objection to the testimony are set out in the Statement of Facts on pages 50 and 51, and we quote the pertrinent parts:

"Q. Doctor, did Mrs. Melton give you a history at the time of your initial examination? A. Yes, sir.

"Q. And did she state that she had received an injury?

"Mr. Leachman: Now, if your Honor please, we'll object to any, the recitation by this doctor of any history that Mrs. Melton may have given him in the absence of any showing that this doctor treated this woman or that she came to him for treatment. [Which the court overruled.]

"Mr. Dees: Did she give you a history of having received that injury, Doctor? A. Well, she said that she was injured while standing at her work, when a shuttle came out of a loom and struck her on the left side of the lower chest, and she was knocked to the floor, etc.

"Q. Did she tell you when this injury had occurred? A. She said it happened on July 28, 1955.

"Mr. Leachman: Your Honor, we'll renew our objection to that testimony in the absence of any showing that this is a treating doctor or that he was approached and his services solicited for the purpose of treatment, and getting this woman well, rather just testifying here in court."

The foregoing objection was overruled.

■ Appellant did not object to the foregoing testimony to the effect that such testimony was hearsay or repetitious and the only objection made was a general objection and not as stated in appellant's assignment of error. The law is well settled that appellant was bound by the assignments of error in its motion for new trial. See Rule 320, Texas Rules of Civil Procedure, which states in effect that any ground not specified in the motion for new trial may not be considered. See also Rule 374, T.R.C.P., which provides, among other things, that the motion for new trial shall constitute the assignments of error on appeal or writ of error and that any ground not distinctly set forth in the motion for new trial, in cases where motion for new trial is required, shall be considered waived. Our view is that appellant is attempting in his assignments of error and in his motion for new trial to raise objections not made during the trial and is asserting an entirely new objection in his brief from the one

made during the trial and in his assignments of error.

█ Dr. Clayton, a witness for appellant, on direct examination set forth substantially the same history as given by Dr. Schoolfield. Appellee herself testified to the same history, without objection, as related by Dr. Schoolfield, and furthermore, the report of Dr. Clayton, which was plaintiff's exhibit No. 9, set forth substantially the same history and was admitted without objection, so that any history given by Dr. Schoolfield was certainly harmless in view of the fact that it was merely cumulative of all the other testimony on the point of history of the injury. See 3A Tex.Jur. p. 212, and cases there cited. A specific objection which has been overruled will be effective as a ground of complaint on appeal only to the extent of the grounds named. See McCormick & Ray, Texas Law of Evidence, Sec. 17, p. 22; Bancroft v. Welch, Tex.Civ.App., 258 S.W.2d 406, point 1 (no writ history); Consolidated Oil Co. of Texas v. Shaffner, Tex.Civ.App., 286 S.W. 258, affirmed Tex.Com.App., 293 S.W. 159; Sparks v. Saltillo Ind. School Dist., Tex.Civ.App., 19 S.W.2d 814, er. dis.; Liner v. U. S. Torpedo Co., Tex.Com.App., 12 S.W.2d 552, affirmed Tex.Com.App., 16 S.W.2d 519.

█ It is our view that appellant's 3rd point is without merit, because nowhere in the opinions of Dr. Schoolfield, in response to hypothetical questions, was he asked to take into consideration any of the history related to him by the appellee, nor does it appear that he did consider same. In view of the questions raised by appellant with reference to Dr. Schoolfield's testimony, we quote the pertinent part of his testimony in Question and Answer form:

"Q. Doctor, based upon the objective findings, your clinical examination and the study of the x-rays made of Mrs. Melton, did you come to any opinion as to whether or not the conditions that you describe there to the jury and your findings as to whether or not Mrs. Melton was able to perform heavy work or not? A. I didn't think she was able to do laborous type work. Certainly not with any degree of regularity.

(No objection was made to this question).

Q. Now, doctor, based upon your examination and the subsequent examination, did you come to any opinion as to whether or not those conditions you have described to the jury are of a permanent nature? A. I think they are.

(No objection was made to this question and answer).

"Q. Assume these facts, doctor, that you have a woman who is forty-seven years of age—forty-six; that she has been gainfully employed for over 20 years, that the type of work that she was doing was standing and using her hands on a loom in a textile mill, requiring her to work 8 to 9 hours per day. That she performed those tasks without any trouble with her back or any portion of her body continuously with no complaints; that on one occasion a wooden object a foot or so long, struck her with great force in the left side of her back there; that she fell to the floor unconscious and was taken immediately to the hospital; that further she was treated and given diathermy treatments for some months, that during that period of time for approximately 10 months, she was still unable to go back and perform her usual work; that the woman upon examination showed findings that you have described to the jury; the narrowing disc space and the objective findings you made on your tests; assume all of those facts to be true, doctor, do you have an opinion as to whether or not such person is able or would be able to perform the usual tasks of her occupation?

"Mr. Leachman: Just a minute, doctor. Your Honor, we'll object to the question and any answer thereto for the reason that the question as framed is a hypothetical question calling for an opinion of this witness, contains assumptions of fact that are not in evidence.

"The Court: Overruled.

"Q. You may answer, doctor. A. Your question was whether or not she could, a person of that kind, could continue working?

"Q. Yes, sir. A. I believe—

"Q. Sir? A. I don't think she could.

"Q. Now, doctor. A. Not regularly, anyway.

"Q. Now, doctor, assuming the fact that an object several feet long, flew out with a high force and hit a person in the back and subsequently they were unconscious, carried to the hospital, and since said time have been unable to work, assuming those facts are true, doctor, and assuming also that you find the conditions that you have described in the x-rays to the jury, do you have an opinion, doctor, as to the reasonable and probable cause of such condition?

"Mr. Leachman: Now if your Honor please, we'll object to the further hypothetical question to this witness for the reason that it contains facts which are not in evidence.

"The Court: Overruled.

"A. Well, providing that it didn't exist before, I would say that it was due to that injury.

"Q. Now, doctor, assume that a person had the conditions that you have found in your examinations and from an examination of the x-rays of Mrs. Melton, had all of those conditions, and do you have an opinion as to whether or not a person who had those conditions that you have already described would be able to stand at a loom on her feet working for 8 and 9 hours a day, and then chopping weeds, maybe working in a garden and all tasks of that nature?

"Mr. Leachman: The same objection your Honor.

"The Court: Overruled.

"A. I don't think they could do that with any degree of regularity, certainly. Might occasionally, but not hold down a job at it.

"Q. Doctor, do you have any opinion based upon the findings that you have made here as to whether or not you can reasonably and probably expect the conditions to improve? A. Yes, I have. I don't think that we can look for any improvement. Certainly not without surgery."

We think it is pertinent here to point out that Dr. Schoolfield stated substantially that appellee was unable to hold down a job regularly and that these conditions were permanent, to which no objection was made, and we think such testimony is sufficient to sustain the finding of the jury of temporary total disability. In this connection it will be remembered that three doctors testified for appellant and they were unable to state, under cross-examination, that appellee was able to work, because of limited knowledge in the field or insufficient examination. Dr. Clayton testified to the effect that appellee was not able to go to work when he last examined her. Dr. Legg testified, on cross examination, to the effect that he was unable to give an opinion because he had failed to make a clinical examination of appellee and could only base his opinion upon examination of the x-rays and said he was unable to rule out any disc injury without a clinical examination. Likewise, Dr. Weisberg made no clinical examination and testified only from x-rays

and said he could not diagnose without a clinical examination.

Returning to appellant's complaint about the hypothetical questions propounded to Dr. Schoolfield, it is our view that an examination of the testimony fails to show that any of the hypothetical questions propounded to Dr. Schoolfield asked him to consider any complaint or pain suffered by appellee or any of appellee's history, or any other subjective symptoms as claimed by appellant. This, we believe, brings appellant's complaint under the rule announced by our Supreme Court in Foreman v. Texas Employers Ins. Ass'n, 150 Tex. 468, 241 S.W.2d 977. See also Texas Employers Ins. Ass'n v. Wright, Tex.Civ.App., 118 S.W.2d 433 (writ dis.). Moreover, appellant, on cross examination, did not attempt to question the opinion of Dr. Schoolfield as to what he included in arriving at his opinion. See Collins v. Chipman, 41 Tex.Civ.App. 563, 95 S.W. 666. Appellant's objection failed to specify at the time of his objection in what respects it did not conform to the testimony, and even after the testimony was closed it did not point out the lack of such facts in the evidence, nor did it renew its request to the court to have the jury disregard the testimony. In Schaff v. Shepherd, Tex.Civ. App., 196 S.W. 232 (writ ref.) the court specifically held in effect that if the hypothetical question does not conform to the facts, then it is necessary in objecting to such question to point out and specify in what respects the question does not conform to the testimony. The court also pointed out that any omitted or different elements should be submitted in questions on cross examination and in that way obtain the opinion of the witness on its theory of the facts of the case. See also Lieck's Legal Trial Aid, 109–110.

■ Under appellant's 5th and 6th points, we find this statement: "After the close of all evidence upon the trial of this case, appellee filed her motion to reopen evidence in the case for the limited purpose of proving up wage rate in the case, that motion being granted by the trial court on the same date. On the following day and after adducing further evidence upon reopening of the evidence, appellee filed her motion for leave to file trial amendment, which motion was granted on the same day. Thereafter plaintiff filed her first trial amendment in accordance with the leave granted, pleading therein as average weekly wage the sum of $46.89 per week. Defendant then took exception to the order granting plaintiff leave to file trial amendment and at the same time filed motion to withdraw announcement of ready and for continuance based upon surprise. On the same date the court overruled defendant's motion to withdraw announcement of ready and continuance." Appellant relies upon the provisions of Rule 66, T.R.C.P., and Rule 270, T.R.C.P. It says substantially: It is conceded that such matters are within the discretion of the trial court, but in like manner appellee must concede that in the case of abuse of discretion, or where the trial court has exercised its discretion clearly erroneously, such discretion may be reviewed by the appellate court. Appellant here contends that the trial court, upon trial of this case, clearly abused its discretion in permitting plaintiff to file a trial amendment after the close of all evidence, and further, even after the trial amendment was filed with leave of the court, the trial court abused its discretion in refusing to permit defendant to withdraw its announcement of ready or grant it a continuance in order that it might have time to prepare a defense to the new matter asserted by the trial amendment. (End of statement from appellant's brief).

Appellee in her reply says substantially that no objection was made to any evidence that she offered concerning the higher weekly wage rate than was originally pleaded. She points out that in her request for admissions and appellant's answer to request for admissions, it was admitted that appellee did not work as many as 300 days, or substantially a year, thereby eliminating the first subdivision under Art. 8309, Sec. 1, Vernon's Ann.Civ.St. It became incum-

bent upon appellee to then prove that some other workman of a like or similar occupation worked for substantially a year, or that no other workman did work for substantially a year under the second subdivision of Art. 8309, Sec. 1, supra. On the second day of the trial a witness for appellee testified that another employee in the same occupation as appellee had worked as many as 300 days and testified that such employee earned a higher wage rate than was originally plead by appellee. No objection was made to the offer of such testimony, nor was a motion for continuance made at that time. The motion for continuance did not come until after the close of appellee's case the following day.

Much has been written on this question. This court had an unusual situation before it in Southern Underwriters v. Hodges, Tex.Civ.App., 141 S.W.2d 707 (writ ref.). We believe our decision in the above case is more liberal than the court exercised in this case. It would serve no useful purpose to discuss it. See also Texas Employers Ins. Ass'n v. Sanders, Tex.Civ.App., 265 S.W.2d 221 (n. r. e.). Moreover, appellee points out that appellant's motion for continuance was not supported by affidavit as provided by Rule 251, T.R.C.P.; nor did such motion comply with Rule 252, T.R.C.P., and cited as further authority Turner v. Atlanta National Bank, Tex.Civ.App., 83 S.W.2d 454, modified on other grounds Sharber v. Atlanta Nat. Bank, 130 Tex. 296, 109 S.W.2d 1042. See also City of Wichita Falls v. Lipscomb, Tex.Civ.App., 50 S.W.2d 867 (writ ref.); Jinks v. Jinks, Tex.Civ. App., 205 S.W.2d 816, point 4 (no writ history).

■ Appellant's 7th and 8th points are substantially: (7) The court erred in charging the jury in its initial charge "You are called on to answer some questions as to particular facts in the case, from the evidence which you heard in the trial" over appellant's timely objection, and (8) the court erred in instructing the jury in a supplemental charge, "You must answer the special issues as you find the facts to be and you are entirely free to make any answer to any special issue in the court's charge as you may find from a preponderance of the evidence, and you will return to your room and reconcile your answers," thereby misplacing the burden of proof on all issues.

We quote the pertinent parts of the supplemental charge:

"You have answered Special Issue No. 3 that the plaintiff was totally incapacitated to work, Special Issue No. 4 that said total incapacity to work is temporary, Special Issue No. 5 that such total incapacity will continue 401 weeks from the date of its beginning, and Special Issue No. 6 that the beginning date of said total incapacity was July 28, 1955; however, you have answered Special Issue No. 7 that plaintiff's incapacity to work was partial, Special Issue No. 8 that such partial incapacity is temporary and Special Issue No. 10 that the beginning date of such partial incapacity was July 28, 1955. Under Special Issue No. 9 you have answered under both (1) and (2) instead of answering under either (1) or (2).

"You are instructed that a person cannot be in law totally and partially incapacitated at the same time. If the plaintiff was totally incapacitated to work for a period of time, she could not be partially incapacitated to work during the same period of time. Stating it the other way (meaning the same thing), if the plaintiff was partially incapacitated to work for any period of time, she could not be totally incapacitated to work during the same period of time.

"The court does not desire to indicate how you shall answer these special issues, but only to point out the conflict in your answers; so, as stated in the main charge, you must answer the special issues as you find the facts to be and you are entirely free to make

any answer to any special issue in the court's charge as you may find from a preponderance of the evidence, and you will return to your room and reconcile your answers."

We quote the pertinent part of appellant's objections to the foregoing charge:

"1. That the jury in this cause has already stated and made known to the court that the jury was deadlocked and could not arrive at a verdict and upon being sent back by the court for the further deliberation have exhibited such inability to arrive at a verdict by returning answers to special issues contained in the charge as set out and contained in defendant's second motion for mistrial, reference to which is here had and made a part hereof as if copied verbatim herein.

"2. That the further instruction as proposed by the court to be given the jury points out specifically what issues conflict with what other issues, thereby advising the jury of the effect to be given their answers thereto; that such instruction is not all inclusive and merely re-emphasizes and points out with particularity some instructions already given without giving all instructions again; that such proposed instruction is a comment on the weight of the evidence and the effect to be given any answers they might make to special issues pointed up in such instruction; and that such proposed instruction fails to advise the jury that the jury need not leave answers to special issues already made as they are, or that they might be changed; that such proposed instruction misplaces the burden of proof as to all of the special issues and in the court's charge as submitted; and/or fails to properly place the burden.

"Wherefore, premises considered, defendant prays the court that such instruction not be given and in lieu thereof without waiving this defendant's in-

sistence upon a mistrial, and only in the event the court determines to further charge the jury and to send the jury back for further deliberation, proposes and suggests and tenders the following instruction to be given to the jury:

"Ladies and Gentlemen of the Jury:

"The verdict you have returned into court in answer to special issues submitted in the court's charge heretofore given you are conflicting. You will please return to the jury room and reconcile your · answers · in accordance with the court's instructions as wholly contained in the court's charge heretofore given you."

In connection with the above point, we have carefully considered the initial charge, together with the supplemental or additional charge, together with appellant's objections, and it is our view that the action of the trial court in overruling appellant's objections does not present reversible error. It is our view that the instructions presented by appellant did not tender in writing a proper instruction as required by Rules 276 and 279, T.R.C.P. See also Barnett v. Barnett, Tex.Civ.App., 206 S.W.2d 273 (no writ history); Gowan v. Reimers, Tex.Civ.App., 220 S.W.2d 331 (n. r. e.); Wenski v. Kabitzke, Tex.Civ.App., 257 S.W.2d 153 (no writ history); Hickman v. Durham, Tex. Civ.App., 213 S.W.2d 569 (n. r. e.).

Rule 279, supra, provides among other things: "Failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or explanatory instruction has been requested in writing and tendered by the party complaining of the judgment." It is our view that the initial charge on the whole is quite complete and accurate. For example, paragraph 3 provides: "In your deliberations you shall not relate to your fellow jurors any personal experience of your own, nor shall you relate any occurrence, happening, or event known to you, and not shown by

the evidence in this case. In all your deliberations, and at all times while you are considering your verdict, you will confine yourselves strictly to the evidence introduced before you in this trial." Under "Definitions and Explanatory Instructions," we find: "The term 'Preponderance of the Evidence,' as used herein means the greater weight and degree of credible testimony (or evidence) introduced before you and admitted in evidence in this case." Finally, we think that the opinion of our Supreme Court in Texas Employers Ins. Ass'n v. Hale, 144 Tex. 432, 191 S.W.2d 472, supports our view to the effect that no reversible error is shown in the supplemental charge given. As to our duty as a reviewing court, see Consolidated Casualty Ins. Co. v. Baker, Tex.Civ.App., 297 S.W.2d 706, points 1–4.

Being of the view that no reversible error is shown, the judgment of the trial court is in all things affirmed.