**BITUMINOUS CASUALTY CORPORATION, Appellant,**

v.

**Willie JACKSON, Appellee.**

No. 6408.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 6, 1962.

Rehearing Denied Oct. 3, 1962.

The Kempers, Houston, for appellant.

Jim S. Phelps, Houston, for appellee.

HIGHTOWER, Chief Justice.

This is a workmen's compensation case. Bituminous Casualty Corporation has appealed from a judgment in favor of Willie Jackson, appellee, for an injury originating in appellee's right shoulder while employed as a blocksetter for J. A. Parker Lumber Company in Montgomery County, Texas. The judgment was rendered upon jury findings of 69 weeks of total temporary disability beginning April 10, 1959, the date of injury, and thereafter for 300 weeks of permanent-partial disability at a loss in wage earning capacity of some 60%. The substance of appellant's points of error shall be stated as they are determined.

The first point charges error of the trial court in refusing to declare a mistrial when an offer of settlement was injected into the case at a very early stage in the following manner while appellee was on direct examination:

"Q. And that is the fourth time you have been to see Dr. Wilkens? A. Yes, sir, as well as I can remember. Q. And on that occasion, the insurance company man was there in the office? A. Yes, sir; he carried me home and I talked with him the first time and he asked me for a settlement and offered me four weeks settlement.

"MR. KEMPER: Your Honor, we object to that. This is highly improper, an offer of settlement. We want to ask the Court to instruct the Jury to disregard that.

"THE COURT: (To the Jury): You will disregard the last statement made by the witness.

"Q. (Mr. Phelps, continuing): Willie, the Court has rulled (sic) you can't talk about what the insurance company said about settlement—

"MR. KEMPER: Your Honor, we move for a mistrial in view of counsel aggravating a previous insurance situation.

"THE COURT: Overruled.

"Q. (Mr. Phelps, continuing): Now, Willie, I want to know about this fourth time you were down there to see Dr. Wilkens.

\*   \*   \*   \*   \*   \*

"Q. When did—how long was it after this fourth time or this time when you were down to see Dr. Wilkens when you were X-rayed, how long was it after that before you came to see me? A. It was, as well as I remember, the time he came to Willis, Mr. Young came to my house and talked with me about a settlement.

"MR. KEMPER: Your Honor, we object to that as not responsive.

"Q. (Mr. Phelps, continuing): Willie, the Court has told you not to go into any of that and don't do it. Just tell me when you came to see me; after you were injured, how long was it before you came to me? A. I would say the next day after I talked to the insurance man."

Though offers of settlement are usually not admissible, we do not believe that the refusal to declare a mistrial was such a denial of appellant's rights as was reasonably calculated to cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. The instructions that appellee's counsel gave him did not amount to such a repetition of appellee's improper answers as would tend to stress or fix it in the minds of the jury that appellant admitted liability in the case. To the contrary, it must be said that such instructions, together with the court's instruction to disregard, amount to an effective admonition to the jury not to consider any statements relative to a prior offer of settlement. Moreover, as suggested in appellee's brief, evidence of an offer of only four weeks more probably implied to the jury, if anything, a complete denial of legal responsibility. The point is overruled.

■ By points 2 and 3 appellant contends that the jury findings of permanent-partial disability are against the great weight and overwhelming preponderance of the evidence and clearly wrong. In this connection appellant reviews the fact that during the interim between injury and trial, appellee held two different jobs of manual labor; contends that the injury did not prevent appellee from performing his regular duties as a blocksetter.

In July of 1959 appellee did work three days and earn $27.00 as a laborer. In part of August and September, 1959, he did approximately five weeks of common labor but at a rate considerably less than that of a blocksetter. There was ample testimony to the effect that appellee's right shoulder dislocated only when he worked with that arm above his head, and that a blocksetter did not have to raise his right arm above his head. However, there is also ample testimony to the effect that appellee performed much light work on the two jobs aforesaid, and that what hard work he was required to do was too much for him. Also, that his ability to work as a blocksetter would be hindered as a result of his injury. Appellee himself testified lengthily and convincingly of the nature and effect of his injury, and his inability to perform the usual tasks of a workman. Appellant's orthopedic surgeon who had examined appellee testified that he would not pass him for a job before the performance of surgery, and appellee's orthopedic surgeon testified that he would not either. He further emphasized that there was only a fifty-fifty chance that surgery would improve appellee's condition. Viewing the testimony as a whole, it certainly presented a fact question for the jury's determination, therefore points 2 and 3 are overruled. In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660.

■ Appellant's last three points assert error by the trial court in allowing appellee to file a trial amendment at the close of all the evidence increasing appellee's wage rate to $68.00 per week from $45.00 per week as originally pleaded.

Appellee had pleaded and went to trial on the following wage rate allegations:

"XI

"Plaintiff would show that plaintiff worked substantially the whole of the year immediately preceding the injuries plaintiff allegedly sustained, and that plaintiff's average weekly wage during this period was in the amount of FORTY-FIVE DOLLARS ($45.00) per week."

"XII

"In the alternative, plaintiff would show that if plaintiff be mistaken as to the length of time that plaintiff had been so employed, that there was another employee who had worked for substantially the whole of the year immediately preceding the injuries plaintiff allegedly sustained in the same or similar employment, within the vicinity, at an average wage of FORTY-FIVE DOLLARS ($45.00) per week."

"XIII

"Plaintiff would show in the alternative if plaintiff be mistaken as to the length of time plaintiff or other employees had worked in such employment, then plaintiff alleges that FOR-TY-FIVE DOLLARS ($45.00) would be a just and fair sum to be used as plaintiff's average weekly wage when computing the rate of weekly compensation."

The trial amendment of which appellant complains was effected by striking from the above quoted paragraph XII of appellee's petition the amount of $45.00 and substituting therefor the amount of $68.00.

Appellant took exception to such action of the court strenuously urging, as it does here, that said amendment took it completely by surprise at a time when, through no fault of its own, it was not prepared to refute said allegations and that the court abused its discretion in allowing said amendment.

We overrule these points of error. Appellee's original allegations of wage rate conformed to the procedure prescribed by Art. 8309 of Vernon's Annotated Texas Statutes. At the time of appellee's employment and at the time of his injury sections 1–3 of said article provided, in substance, three methods for computing an employee's "average weekly wages" for the purpose of determining the amount of compensation benefits due. (1) The actual daily wage should be used if the employee, or, in the alternative (2) another employee "of the same class", worked in the employment in question "substantially the whole of the year immediately preceding the injury." (3) If neither the employee injured nor an employee of the same class worked substantially the whole of the preceding year, then the act required that the average weekly wage be fixed in an amount "just and fair to both parties."

It is elementary that a claimant cannot obtain the benefit of the second method unless he first negatives the first method; nor can he obtain the benefit of the third method unless he has negatived the first and second methods. It is undisputed that the first method was negatived by proof that appellee had worked less than 260 days of the year immediately preceding his injury.

On the second morning of the trial, February 2, 1960, appellee proved by another witness, Upton Barnes, that such witness was an employee of the "same class" as appellee, and had worked in the employment in question "substantially the whole of the year immediately preceding the injury" for an average weekly wage of sixty-eight dollars per week. Appellant did not object that such testimony was without support in the pleadings. Appellee thus established the number 2 method of Art. 8309, supra, for computing the amount of compensation recoverable. After the testimony of witness Barnes, appellee rested. The same day appellant put on two witnesses. Court then recessed to February 3, 9 o'clock A.M., on which day appellant then put on two more witnesses and rested. Appellee then put on two more witnesses and both sides rested. Thereafter, while the court and counsel were preparing the charge, the trial amendment was offered and granted. The following day the case was submitted to the jury.

After both sides had rested, appellant stood charged with the knowledge that appellee was compelled to rest his recovery upon the number 2 method inasmuch as he

had not negatived it but had negatived the first method. Appellant had made no effort to controvert the testimony of witness Barnes during the trial, nor had it offered any explanation for such failure other than that it was surprised. It did not request the court to reopen the case when the amendment was proffered and granted, nor did it seek a delay or postponement in order to meet the amendment. We hold that the trial court did not abuse its discretion in allowing the trial amendment. Texas Employers Insurance Association v. Melton, Tex.Civ.App., 304 S.W.2d 453, N.R. E.

Judgment affirmed.