**TEXAS GENERAL INDEMNITY COM-
PANY, Appellant,**

v.

**Clifford Lee SCHICK, Appellee.**

No. 3787.

Court of Civil Appeals of Texas.

Eastland.

Sept. 6, 1963.

Stubbeman, McRae, Sealy & Laughlin, Midland, for appellant.

Warren Burnett, Odessa, Hartman Hooser, Big Spring, for appellee.

COLLINGS, Justice.

Clifford Lee Schick brought suit against Texas General Indemnity Company seeking to recover benefits under the Workmen's Compensation Act because of an injury alleged to have been sustained by plaintiff on or about November 9, 1960, while he was employed by Cabot Engineering Company in Howard County. The case was tried before a jury which found that as a result of the injury plaintiff sustained 300 weeks total disability followed by 101 weeks partial disability, and that plaintiff's average weekly wage earning capacity during the period of partial disability was $35.00. An average weekly wage rate of $95.00 was stipulated. The jury also found that plaintiff sustained an injury to his back during March of 1962, but that such injury did not result in any incapacity. Judgment was entered for plaintiff on the basis of the verdict and stipulation. The defendant has appealed.

In appellant's first four points it is contended that the court erred in entering judgment for plaintiff (1) because there was no evidence of any causal connection between the injury of November 9, 1960, and the disability of plaintiff, and (2) because there was no evidence establishing that the claimed disability resulted from the injury of November 9, 1960, rather than from the injury to his back in March of 1962; that the court erred in entering judgment for the plaintiff on the basis of the finding of 300 weeks of total disability followed by 101 weeks of partial disability resulting from the injury of November 9, 1960, (3)

because there was insufficient evidence to support such finding, and (4) because such finding is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

The evidence shows that Schick went to work for Cabot Shops in Pampa, Texas, in June of 1960, at which time he passed a rigid physical examination. Schick testified that prior to that time he had been able to do and did do all kinds of manual labor, including cattle hauling, brick hauling and loading, and the handling and hauling of 300 pound bales of broom corn. He worked for Cabot Shops in Pampa for about 2 months and was laid off because of lack of seniority. About a week later he was called and went to Big Spring to work for Cabot Engineering doing painting and general construction work. This work involved much bending and stooping. On November 9, 1960, Schick was endeavoring to set a 300 pound conveyor mechanism on some channel iron 186 feet above the ground and in stooping and bending over to do this work he felt a sharp pain in his back. Schick stated that the pain was so severe that he had to lie down on top of the tank while other employees on the job gathered up the tools at quitting time; that he had trouble getting down the ladder and experienced great pain at about the belt line. The next morning he was unable to get out of bed and dress himself without the help of his wife. He informed Cabot of his condition and they sent him to Dr. Williamson in Big Spring where he was X-rayed, given a shot in the arm and heat treatment. He continued to see Dr. Williamson for about a week and a half before he returned to his home in Shattuck, Oklahoma, at Thanksgiving time. While he was in Shattuck he went to see Dr. Bergdorf, an orthopedic surgeon, and was treated by him. Schick had previously been treated by this doctor for back trouble. Upon returning to Big Spring after Thanksgiving, he continued to see Dr. Williamson for treatment until he moved back to Shattuck in December 1960. He was also sent by Cabot to Dr. Robinson at Kermit, Texas, for an examination. After he returned to Shattuck he again saw Dr. Bergdorf and was placed in the hospital. On December 16, Dr. Bergdorf performed a partial laminectomy at the fourth lumbar level. After the operation Dr. Bergdorf advised Schick that he would have a 15 percent over all reduction in his physical efficiency and advised him not to do hard work, not to stoop, not to drive a truck, that even doing work as a waiter would be bad for him, that he would be better off if he quit oil field work and that it would be best for him to get into an independent business. The doctor also recommended to Schick after the operation that it would be good for him to have hot tub baths and to keep his back flat by sleeping with a pillow under his knees.

Dr. Bergdorf testified that the nucleus pulposus is the center of the intervertebral disc and acts as a cushioning and mild weight bearing material; that the most common cause of nerve root pressure is a protruding disc which will normally, in the lumbar area, be reflected by motor or sensory disturbances in one or both lower extremities. He stated that straight leg raising is a test used to determine nerve root pressure on the sciatic nerve and that a normal man's leg can be elevated 80 degrees without pain; that nerve root pressure is of varying degrees, and the more severe the degree the lower the leg can be elevated on the straight leg raising test. The doctor stated that the purpose of the operation he performed on Schick was to remove all the nucleus pulposus in the affected area and to thereby relieve the nerve root pressure.

The doctor stated that when Schick first came to see him after the November, 1960 injury his straight leg raising was positive at 50 degrees on the right and 65 degrees on the left; that in April of 1961 Schick stated that he had been having some low back pain while driving a truck, but that the straight leg raising test was at that time negative for sciatic which indicated no nerve root compression; that in March, 1962, sixteen months after the operation, when Schick

came to the doctor complaining of another back injury the test showed 35 degrees in both legs, which was strongly suggestive of nerve root irritation and a protruding disc and a more acutely painful condition than before the December, 1960 operation. Dr. Bergdorf stated that Schick's trouble at the time of the March 30, 1962 examination was below the level of the area on which surgery was performed in December of 1960; that his findings on that occasion were strongly suggestive of a herniated intervertebral disc and that Schick then had greater nerve root pressure or irritation than he had at the time of the operation. Dr. Bergdorf testified that in his opinion there was no relation between the injury to Schick's back in March of 1962 and the prior injury of November, 1960, other than that Schick had a congenital predilection to disc injury. He also testified that if Schick had any disability at the time of the trial it could be the result of the March, 1962 injury; however, that in his opinion there was no reason why Schick could not then obtain and retain employment doing the usual tasks of a workman. Dr. Bergdorf indicated he could not positively state the cause of the nerve root pressure found in March, 1962 and admitted that it was possible that all of the nucleus pulposus might not have been removed in the operation of December, 1960; that his clinical tests limited the problem to either the fourth or fifth lumbar vertebrae; that it was unlikely that the fifth lumbar vertebrae could have caused the trouble because it was sacralized; however, that it was not at all uncommon to have to go back and do a second operation to repair the first one. The doctor stated that Schick was predisposed to back injury; but, was able to work when he saw him in 1958, and at that time had no leg pain. He further stated that Schick should not lift anything over 25 to 40 pounds unless he could keep his back absolutely straight but further stated that this applied to every one in Schick's age group.

The evidence indicates that Schick tried to return to work in February of 1961; that he received no compensation payments until December 16, 1960, but had been off work and under a doctor's care since November 9th. Schick stated that his wife had presented him with a baby and, in addition, was in ill health and required medical treatments; that it was under these circumstances that he got a job driving a milk truck, which required lifting, stooping and crawling through a manhole to clean out and wash the tanks; that he was not able to do the work and had to have help from other employees to do the job; that his back pained him while doing such work, would get very stiff after any "long haul driving" and when he came home at night his back was in great pain; that he was sometimes unable to dress himself and unable to sleep; that actually he was unable to do the work properly and his boss was about to let him go; that he worked a total of about two and a half months on this job. He stated that about two weeks later he got a job as a truck driver; that his wife had entered the hospital for surgery and that he had to work; that when he had finished a day's work on this job he was in such condition that he sometimes had to crawl up his own front steps; that he managed to continue this work for about four months, although his back and legs were bothering him; that he was then laid off the job and given work with a companion company; that the new work was much lighter but after one and a half or two months he was laid off on this job because he couldn't do the work and was replaced by a larger and huskier employee.

Schick testified that about a month later he opened a cafe for a short time but found the work too hard and he was unable to keep the business going; that he then secured work on a well servicing job which involved the operation of power tongs and a hand clutch on the motor, but that lasted only one week and then "played out." He stated that thereafter he was unable to find any work for a long time but finally got work on a light swabbing job which lasted about three weeks; that he hurt his knee on this job and as a result thereof Dr. Bergdorf per-

formed an operation on his knee but that the knee got all right except for some numbness which does not interfere with working or walking. In March of 1962, he was jacking up a pick-up truck trying to get it out of a mud hole while running an errand for his uncle, and had such a severe back pain that he collapsed. This happened about two and a half months before the trial. Thereafter he again had part time work for about two weeks for the milk company and continued to have trouble with his back and legs. Shortly before the trial on June 25, 1962, he began work in a small welding shop, doing light welding jobs on a piece-work percentage basis and was still engaged in this kind of work at the time of the trial. Schick testified that based upon his experience with his injury he believed that he would never again be able to work regularly at any job requiring lifting, straining or heavy manual labor; that he has had continuous trouble with his back and legs; finds it painful to ride in a car or sit in a hard chair; that he has to shift position constantly while sitting, because of pain, and then it starts hurting in a different place; that when he gets in one good day's work he usually has to rest the next three or four, and has to lay with pillows under his knees and take hot baths to relieve the pain and often has to sleep on the floor at night; that his condition has not gotten any better but has gone from bad to worse.

Appellant's points urging that the court erred in rendering judgment for the plaintiff because there was no evidence that Schick's incapacity resulted from his injury on November 9, 1960, and no evidence that his diability resulted from the injury of November 9, 1960, rather than the injury to his back in 1962, are overruled. The jury found that Schick did sustain incapacity as a natural result of the November 9, 1960 injury and also that the injury of March 12, 1962, did not result in any incapacity. In our opinion there is evidence, both direct and circumstantial, as above substantially set out to support these findings. See article by Judge Calvert in 38 Texas Law Review, 361, 364, also Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286. We also hold that the findings concerning Schick's total and partial disability are not lacking in support of sufficient evidence and are not against the great weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. We cannot agree with appellant's contention that the controlling questions are wholly within the realm of scientific knowledge and beyond the experience of a lay witness, and that the testimony of Dr. Bergdorf to the effect that there was no relation between the two injuries and that any incapacity existing at the time of the trial could have been a result of the March, 1962 injury, is conclusive. In the first place opinion evidence is not conclusive even though it is not disputed. In addition, Dr. Bergdorf admitted that he could not state positively the cause of the nerve root pressure he found in his March, 1962 examination and that the prior operation might not have gotten all of the nucleus pulposus. The doctor further stated that in January or February of 1961, it was his opinion that Schick had suffered at least a fifteen percent permanent reduction in his over all physical efficiency. The testimony of Schick and other witnesses concerning the difference in his ability to work before and after the injury complained of, Schick's testimony that the work he did was under the pressure of necessity, the evidence concerning the duration of his disability and the degree and progress of his recovery all constitute evidence which amply support the verdict. Considering all this evidence we conclude that the findings complained of are not against the great weight and preponderance of the evidence. In re King's Estate, supra.

In appellant's fifth point it is contended that the court erred in permitting appellee Schick to testify that it was his opinion and belief that he would never be able to work regularly at any form of heavy manual labor involving lifting and straining. The point is not well taken. In Texas Employers Insurance Association v. Melton,

**364**

Tex.Civ.App., 304 S.W.2d 453, it was held that the question of whether or not an employee would be able to go back and do the kind of work which the employee had been doing at the time of the injury "was testimony only of an evidentiary nature and was not solely a question of expert testimony." In the instant case the testimony of appellee Schick was by its terms based upon the experiences which he had had with his injury as he had related it to the court and jury and which tended to support his conclusion. In our opinion the testimony complained of was admissible. Appellant has cited no authority to the contrary.

The judgment is affirmed.