Jim PARKS, Appellant,

v.

The BENSON CO., BUILDERS, et al.,
Appellees.

No. 16636.

Court of Civil Appeals of Texas.

Fort Worth.

July 16, 1965.

Rehearing Denied Sept. 17, 1965.

Bill Atkins, Arlington, for appellant.

Urban, Coolidge & Pennington, Houston, Cantey, Hanger, Gooch, Cravens & Scarborough, John McBryde and Estil Vance, Jr., Fort Worth, for appellees.

MASSEY, Chief Justice.

In this case the material defendant was a cross-plaintiff. Neither he nor the plaintiff was satisfied. All parties appealed.

Jim Parks, plaintiff below, was a paint sub-contractor. The defendant Benson Company, Builders, was a general contractor; Student Housing, Inc., also a defendant, was the owner for whom Benson Company erected a building. The Benson Company, hereinafter termed as defendant, had a contract to erect a dormitory in Arlington, Tarrant County, Texas. This defendant entered into a contract with plaintiff to do the painting necessary on the dormitory. The agreed consideration therefor was $22,643.00. Plaintiff's agreement was to paint the building exterior with two coats of paint and the interior with one coat, save columns in the interior which were to be given two coats. There were other obligations of the plaintiff which we may disregard.

Plaintiff engaged labor and purchased materials and proceeded. The defendant's general superintendent was a Mr. Bob Bales.

On or about April 17, 1963 plaintiff billed the defendant on the basis of a 90% job completion (as applied to the $22,643.-00 contract), for which he was then entitled to be paid 90% (of said total amount) less a 10% "retainer"—according to his understanding of the agreement. This meant that he billed the defendant for $20,378.70, less "retainer" of $2,037.87, or a total amount due of $18,340.83 with expectation he would be paid the last stated figure. Bob Bales understood that such was the agreement, for he "okeyed" the bill upon satisfying himself (as defendant's superintendent) that plaintiff had actually performed his contract to the extent of a 90% completion.

The defendant felt it wise to pay only 75%, or $16,982.00. This was the amount paid. Additional contracts were entered into between Bales, acting for defendant, and the plaintiff. Of these there were three, the first in the amount of $250.00, the second in the amount of $1,234.80, and the third in the amount of $143.00. In addition plaintiff delivered 18 cans of paint to the defendant, at a charge of $29.70.

This resulted in a total amount claimed by the plaintiff of $24,300.50, less the amount of $16,982.00 paid thereon, with a balance claimed of $7,318.50. (Under a jury finding that $250.00 was the amount remaining to be expended to complete the contract by plaintiff at time his work ceased, the amount of plaintiff's judgment was $7,068.50.)

As performance under the contract neared completion some inspectors for the defendant looked over plaintiff's work. A dispute arose at the time, in that the inspectors contended that plaintiff was obligated to paint the interior walls of the dormitory with two coats of paint. Seemingly, the dispute was resolved upon proof by plaintiff that his bid was on the basis of only one coat. When the "acceptance" of defendant came from Houston (through its superintendent, Bales) it had a provision for two coats. Pursuant to a long distance telephone conversation between Bales and an authorized official in the defendant's home office the signed instrument had been changed in ink to show only one coat. A meeting of the minds of the parties did not take place until this was done.

During course of the trial, a part of the defendant's theory of defense to the plaintiff's suit was that there had been a failure on the part of plaintiff to paint the interior

with two coats of paint. Defendant so plead. The proof utterly destroyed the defense.

At a time when, according to plaintiff, his performance under the original contract was more than 95% completed, Bales was removed as superintendent. In his place defendant employed a Mr. Cone. About the time Cone became superintendent, inspectors for defendant visited the "job site" and a disagreement between them and the plaintiff occurred in that they pointed out certain work they desired to be done. They were obviously of the opinion that plaintiff would either treat it as work falling within the contractual provisions, or would supply it at no cost as an accommodation. Plaintiff insisted it was not covered by the contract. If performed by him, he made it known that an additional payment would be demanded. The agents for the defendant were most unhappy. They returned to the home office where they discussed plaintiff's work in general. They agreed between themselves that it was unsatisfactory. They informed the new superintendent, Cone. Apparently Cone allowed plaintiff to work two or three days thereafter, but then confronted him with the defendant's dissatisfaction. Part of the discussion concerned plaintiff's refusal to put a second coat of paint on the interior of the dormitory. In any event, pursuant to this discussion and under authority conferred by his principal, Cone offered to "buy" the balance of plaintiff's contract for $4,000.00. Had plaintiff agreed to make such a deal he would have received $3,318.-50 less than he claimed under the primary contract plus the three subsidiary transactions and the price charged for the 18 cans of paint. On trial plaintiff claimed that at the time of the aforesaid discussion his work was at least 98% completed, but that Cone refused any further performance of the contract and "terminated" his work in all respects.

Whether the discussion about the $4,-000.00 "purchase" of the remainder of plaintiff's contract amounted to an offer in compromise by the defendant is a matter of dispute between the parties. Plaintiff contends that it was not, while defendant claims that it was. There is no question but that the trial court agreed with the defendant, for he ordered that testimony thereupon be excluded from the jury. The court granted the defendant's motion *in limine* when the offer of evidence was made outside the presence of the jury—from the lips of plaintiff. Then, after the jury was brought in and trial proceeded, the plaintiff—voluntarily and not in response to any question—testified that when he left the job the defendant "offered me $4,000.-00".

When this occurred—on cross-examination—the attorney for the defendant continued with a few questions which he hoped would minimize the harm he believed had been caused, but at the earliest reasonable opportunity brought the matter before the court. He moved for a mistrial—not only because of the error, but because the plaintiff had committed intentional error in violating the court's order sustaining defendant's motion *in limine*. The plaintiff was questioned. He stated that he did not understand that the court had directed that he not testify about the offer of Cone. Holding its ruling in abeyance the court proceeded, though indicating to defendant's counsel his willingness to instruct the jury to disregard the improper testimony. Counsel decided that to so instruct the jury would likely do even further damage to the defendant's case—and declined to move for such instruction. Ultimately the court overruled the motion for mistrial.

The jury returned a verdict for the plaintiff. In its motion for new trial defendant assigned the reception by the jury of Cone's offer in compromise as reversible error. No affidavit of any juror was attached to defendant's motion. The plaintiff countered with an opposing motion. Thereto he attached, as an exhibit, a statement of one of the jurors to the effect that the juror did not recall that there was any testimony concerning an offer of compro-

mise or settlement and that during the deliberations of the jury no mention was made of any party having made an offer of this character.

Defendant's motion for new trial was heard and overruled. It does not appear that there was any tender of testimony at the hearing. In other words, if the defendant knew of any evidence which might have been presented, from which the court might find or conclude that the information erroneously imparted to the jury about the defendant's offer of compromise probably did cause it to return a verdict other than that it would have returned had the information not been so imparted, there was an election not to offer such and not to explain why it was not offered.

■ It is well settled that evidence which will show an offer in compromise upon the liability at issue between the parties is improper and inadmissible evidence. However, admitting that in a proper case an exception might apply, the error is usually curable and may be remedied by an instruction from the trial court to disregard it as evidence. Bituminous Casualty Corporation v. Jackson, 360 S.W.2d 900 (Beaumont Civ.App., 1962, writ. ref., N.R.E.); cases in 16 Tex.Digest, ■ "Offers of compromise or settlement.—In general."; McCormick & Ray, Texas Law of Evidence, 2nd Ed., p. 29, "Admissions of a Party", § 1142, "Offers of Compromise—(a) Civil Cases".

■ Furthermore, "reversibility" because of such an error, as in other cases of erroneous admission of evidence, depends upon judicial decision made in light of Texas Rules of Civil Procedure, rules 434 and 503. In other words a reversal of the judgment in the case will not be required unless it appears from a consideration of the record as a whole that its admission was reasonably calculated to cause and probably did cause the rendition of an improper verdict. Dallas Railway & Termi-

nal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379 (1952); Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682 (1955); 4 Tex.Jur.2d p. 566, et seq., "Appeal and Error—Civil", § 941, "Evidence rulings".

■ In the instant case we believe that the error was reasonably calculated to cause the rendition of an improper verdict in that a juror of ordinary intelligence might thereby be persuaded to render a verdict other than that which he would have rendered but for the reception of the erroneous testimony. Even so, when we view the whole record as a whole we are not prepared to find that the reception of said testimony probably did cause the jury to render a verdict which it would not otherwise have returned. In so stating we do not disregard the fact that the defendant was apparently unprepared to show at the hearing of its motion for new trial that the jury did discuss the fact that an offer in compromise had been made.

From the whole record we are conscious of the fact that defendant appeared in an unfavorable light from the time it changed the written offer of the plaintiff in making his bid from a provision for one coat of inside paint to two coats; then, though there was evidence that it authorized its superintendent, Bales, to correct the contract in order that plaintiff would sign it, defendant went to trial with its defense predicated, in part at least, upon the failure of plaintiff to paint the inside of the dormitory with two coats of paint. Afterward, defendant remitted 75% of the amount of the contract for work done, though the evidence showed that both plaintiff and superintendent Bales expected that 90% of said amount would be paid at such time. Finally, there was evidence that after the decision was made by the defendant company to "terminate" plaintiff's work and secure another paint contractor or to perform the necessary additional work with its own employees, plaintiff was allowed to work a few more days before there was an actual "termination."

Hence, with the record viewed in its entirety and reversibility of the error, tested under the provisions of T.R.C.P. 434 and 503 we have concluded that we should overrule defendant's point of error.

■ Other of defendant's points of error are based upon its contention that findings of the jury were against the great weight and preponderance of the evidence. We have reviewed the whole record. We do not believe that any of the findings of which complaint is made were against the great weight and preponderance of the evidence. We see no occasion for an extended discussion. Generally, the findings relate to the adequacy of plaintiff's work, authority of defendant's superintendent to bind it to pay for paint work admittedly necessary to be performed, and the cost to complete the work which plaintiff left unperformed because he was "terminated".

The plaintiff has two points of error. By one he contends that the court erred in refusing to award attorney's fees in addition to that he received by the judgment. The parties in the case stipulated the amount of reasonable attorney's fees in the event they were proper to be awarded, but were in disagreement upon the propriety of such an award. By the other point of error plaintiff contends that interest upon the amount of his recovery should have dated from a time prior to that of the judgment.

We overrule both of plaintiff's points of error.

■ On the matter of attorney's fees: Plaintiff did not contract to perform any labor himself. The labor performed was furnished pursuant to contract, by employees of plaintiff. The materials furnished by the plaintiff was pursuant to the performance of the labor necessary to incorporate said materials into the building as part of the work contracted. The parties are not in disagreement that plaintiff's contract was "terminated" without his being allowed to finish it according to his conception of the term. Defendant, of course, contends that plaintiff's performance was materially unperformed.

As stated by the trial court in its opinion the case is nothing more nor less than one for breach of contract for a painting job. The claim, essentially, is one based on a special contract which covered both the supplying of labor and material, and one in which attorney's fees are not recoverable. (We feel that the very insignificant part of the case represented by the charge for 18 cans of paint may be disregarded.) Vernon's Ann.Tex.Civ.St. Art. 2226, "Attorney's fees", is penal in nature and should be strictly construed. Davenport v. Harry Payne Motors, 256 S.W.2d 245 (Austin Civ. App.1953, no writ).

As was pointed out in Kirkwood & Morgan, Inc. v. Roach, 360 S.W.2d 173, 177 (San Antonio Civ.App.1962, writ ref. N.R.E.), "It is true that appellee performed some labor in dumping and spreading the sand which was furnished by appellant. However, this suit was for damages for breach of contract and not for labor done. Hicks v. Smith, Tex.Civ.App., 330 S.W.2d 641. The award for attorney's fees was not proper in this case. Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75." See also Ford Motor Company v. Davis Brothers, Inc., 369 S.W.2d 664, 668 (Eastland Civ.App.1963, no writ.), a case of similarity to the instant case, in which the court held that the plaintiff's cause of action was based upon special contract and did not come under the provisions of Art. 2226.

■ In view of what we have said, hereinabove, bearing upon the nature of the case as one for damages for breach of contract, it follows that the trial court properly awarded interest from the date of the judgment. The amount due plaintiff was not ascertainable by the contract of the parties, but was dependent upon extraneous proof.

Judgment is affirmed.